No. 80-334

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

JAMES W. BRUBAKER,

Defendant and Appellant.

---

Appeal from:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone.
Honorable Charles Luedke, Judge presiding.

Counsel of Record:

For Appellant:

John L. Adams, Billings, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Harold F. Hanser, County Attorney, Billings, Montana

---

Submitted on briefs: February 17, 1981

Decided:  MAR 20 1981

Filed:  MAR 20 1981

Thomas J. Kearney
_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

On November 4, 1977, defendant was convicted of the offense of aggravated assault. This Court reversed the conviction and ordered a new trial. State v. Brubaker (1979), ____ Mont. ____, 602 P.2d 974, 36 St.Rep. 1915. On June 4, 1980, defendant was again convicted of the offense of aggravated assault following a jury trial in the District Court of the Thirteenth Judicial District. Defendant now appeals.

On January 12, 1977, defendant-appellant brought his girlfriend and roommate, Sharon Watson, also known as Sharon Brubaker, to the emergency room of Big Horn County Memorial Hospital. Dr. Robert Whiting, the attending physician, testified that Watson was comatose with abnormal respiration and other neurological symptoms indicating severe brain damage. He noted multiple bruises over the left side of her forehead, her eye, her arms and shoulders. He estimated that the bruises were at least forty-eight hours old.

Watson was transported by ambulance to Billings, Montana, where she was treated by Dr. Lashman Soriya. Dr. Soriya diagnosed a head injury causing severe brain damage. He also observed multiple bruises and stated in his opinion they were approximately forty-eight hours old and could not have been caused by a fall. Dr. Soriya performed brain surgery on Watson the next morning to relieve intracranial pressure caused by a large blood clot. Based on his evaluation of the symptoms, his opinion was that once the injury was inflicted, Watson would have lost consciousness and could not have possibly awakened.

On January 17, 1977, Detective Rickard Ross

interviewed appellant regarding the circumstances under which Watson was injured. Appellant told Ross that he had closed the bar where he and Watson lived and worked at approximately 1:00 a.m. on Wednesday, January 12, 1977. Appellant stated that he spent approximately one-half hour hauling coal from an outbuilding into the bar and that he then discovered Watson lying unconscious on the floor on some electrical wires. He stated that he took Watson into their living quarters where she regained consciousness, took two aspirins, and drank some 7-Up. Appellant stated that Watson regained consciousness several times in the next few hours but that her condition deteriorated in the afternoon leading him to take her to the hospital that evening. A tape recording of appellant's statement was played at trial. Appellant's testimony at trial was essentially consistent with the taped statement.

The State presented several witnesses at trial who contradicted appellant's story. Cy Welch and Jim Clifton testified that appellant had told them that Watson received her injuries Tuesday morning, rather than Wednesday morning. Dr. Whiting and Dr. Soriya also contradicted appellant's story. Both doctors testified that the bruises they observed on Watson's body on Wednesday evening were at least forty-eight hours old.

The State also presented testimony from two witnesses as to a previous assault on Watson by appellant. Kenneth Perrin and Don Gilreath testified that sometime in late spring of 1977 they observed appellant strike Watson in the parking lot of the Prairie Diner east of Custer, Montana. In both instances, an admonition was given to the jury to

-3-

comply with the decision of this Court in State v. Just (1979), ____ Mont. ____, 602 P.2d 957, 36 St.Rep. 1649.

Appellant raises two issues:

1. Whether the District Court erred in permitting witnesses Perrin and Gilreath to testify as to an alleged prior assault by appellant on the victim approximately eight or nine months before the crime here charged?

2. Whether the District Court erred in failing to dismiss the charge of aggravated assault because there was not sufficient evidence to connect appellant to the alleged assault on the victim?

Appellant argues that the testimony on the part of the two witnesses called to testify as to a prior assault by the appellant on the victim was too remote in time. He also argues that the prior assault had no relation to the crime charged here. He further argues that the probative value was less than the inherent prejudicial nature of the testimony.

In the prior Brubaker case, we addressed the issues raised here and held that the testimony of these two witnesses was properly admissible as evidence of other crimes. "The evidence of Perrin and Gilreath relates to an incident where the assault by Brubaker resulted in a severe injury to Sharon and it was an attack within the kind that must have occurred to her on January 10 or 11, 1977. . ." State v. Brubaker, 602 P.2d at 981.

> "We recognize that the admission of such evidence is an exception to the general rule and accordingly we are obligated to look very carefully at the relative probative value of such evidence, if any, and weigh it against the prejudice inherent in this type of evidence in the light of the actual need to introduce such evidence by the state."

-4-

State v. Frates (1972), 160 Mont. 431, 503
P.2d 47, 50.

The admission of "other crimes" evidence is determined under a four-part test: (1) whether the acts are sufficiently similar; (2) whether the acts are too remote in time; (3) whether the evidence is offered for one of the purposes permitted by Rule 404(b), Mont.R.Evid.; and (4) whether the probative value of the evidence outweighs its inherently prejudicial nature. State v. Just (1979), ____ Mont. ____, 602 P.2d 957, 36 St.Rep. 1649.

The first element of the test was satisfied. The acts were similar in nature. Second, the other act occurred approximately eight months prior to the crime charged here. This is not too remote in time. State v. Jensen (1969), 153 Mont. 233, 455 P.2d 631. (Allowing evidence of previous crimes fifteen months before other crime charged.) Third, Rule 404(b), Mont.R.Evid., states: ". . . [other crimes evidence] may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." (Emphasis supplied.)

The evidence was offered to show a course of assaultive conduct by the appellant and to negate any suggestion that the victim had suffered her injuries by accident. In State v. Heine (1976), 169 Mont. 25, 544 P.2d 1212, we held that evidence of a prior assault on the same victim was admissible for precisely the same purpose as presented in this case.

Finally, the evidence was highly probative and necessary to the State's case. The evidence in this case was entirely circumstantial. The State proved corpus

-5-

<u>delecti</u> and opportunity, but the evidence of other crimes added substantially to the State's case by showing that appellant had on a prior occasion inflicted serious injuries on the same victim and in the same manner, thus negating the inference that the injuries were sustained by accident.

Next, appellant contends the evidence was insufficient to support the jury's verdict of guilty.

Reviewing the entire record this Court finds sufficient evidence to support the verdict. Dr. Whiting and Dr. Soriya clearly established that the injuries to the victim were inflicted some forty-eight hours prior to the time appellant brought the victim to the emergency room. Appellant testified that he found the victim injured some eighteen hours before he sought treatment of her injuries. Dr. Soriya's testimony showed that the injuries could not have been sustained in a fall or in several falls. His testimony further directly contradicted appellant's testimony that the victim had regained consciousness several times.

Appellant had the opportunity to commit the crime. There is no evidence that anyone other than appellant was with the victim when the injuries occurred. Appellant never reported an assault on the victim. Appellant's own statement provided evidence of motive. His statement shows the existence of prior domestic discord which resulted in physical confrontation between him and the victim. Appellant admitted striking the victim on another occasion during an argument over her prior husband. When the testimony of Perrin and Gilreath is added, the evidence against appellant is sufficient as a case built on

circumstantial evidence to exclude any hypothesis consistent with appellant's innocence. See State v. Fitzpatrick (1973), 163 Mont. 220, 516 P.2d 605.

The fact that appellant never reported the incident to the police and waited some forty-eight hours before seeking medical attention for life-threatening injuries is certainly not consistent with innocent conduct. Further, appellant's explanation of his failure to report the alleged assault to the sheriff--that he assumed the doctors would automatically do so--is belied by the fact that appellant never told Dr. Soriya that an assault had occurred.

When the evidence is reviewed in a light most favorable to the State, State v. Pascgo (1977), 173 Mont. 121, 566 P.2d 802, we find that the verdict clearly is supported by substantial evidence. While the evidence is circumstantial in part, it indicates injuries inflicted by the appellant in a domestic quarrel and not some type of accidental injury.

Affirmed.

_____
                    Justice

We concur:

_____
        Chief Justice

_____

_____

_____
        Justices