No. 81-70

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

DENNIS VIRGIL DONEY,

Defendant and Appellant.

---

Appeal from: District Court of the Twelfth Judicial District,
In and for the County of Hill
Honorable B. W. Thomas, Judge presiding.

Counsel of Record:

For Appellant:

Morrison, Ettien and Barron, Havre, Montana
Chris R. Young argued, Havre, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Sheri Sprigg argued, Assistant Attorney General,
Helena, Montana
Ronald W. Smith, County Attorney, Havre, Montana
David Rice argued, Deputy County Attorney, Havre,
Montana

---

Submitted: September 18, 1981

Decided: OCT 2 0 1981

Filed: OCT 2 0 1981

Thomas J. Kearney
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

After trial by jury, defendant was convicted in the Twelfth Judicial District Court, Hill County, of aggravated assault and attempted robbery. He appeals the conviction. We affirm.

The following issues are presented to this Court for review:

1. Whether the District Court erred in denying defendant's motion for a directed verdict of acquittal.

2. Whether the District Court erred in refusing to overturn the jury's verdict of not guilty of attempted deliberate homicide, but guilty of the lesser included offense of aggravated assault and guilty of attempted robbery.

3. Whether the District Court erred in refusing to commit the defendant to the custody of the director of the Department of Institutions.

On February 17, 1980, shortly after midnight, three persons entered the Park Hotel in Havre. One of them, the defendant, wearing a long, dark coat and a dark western hat, became abusive to the night clerk who said there were no rooms. He straddled her chair, repeatedly pushing her down, threatening her and accusing her of hating Indians. The clerk said if he harmed her, the police would catch him. The defendant replied that he could be across the border before the police knew what happened. He then grabbed the night clerk's hand and attempted to remove her ring; when he could not, he took out a pocket knife, threatened to get the ring by cutting off her finger, and pressed the blade against her finger, leaving a white mark. The night clerk finally managed to rise whereupon the defendant seized her by the shoulder and stabbed her once in the abdomen, inflicting a wound that required several days' hospitalization. When an elderly woman approached and ordered the defendant to "Let that girl alone," he turned toward her, and the night clerk

fled. She returned with help, but her assailant had fled. The night clerk recalled the defendant had worn a "smirky smile" during the attack, and once, when she glanced at his eyes, they appeared "glassy".

The following afternoon, defendant was arrested in the Great Falls bus depot and returned to Havre, where he was charged with attempted robbery and attempted deliberate homicide. Defendant indicated his intention to rely on the defense that, due to mental disease or defect, and due to his intoxicated and drugged condition, he was incapable of forming the requisite mental state. He was subsequently tested and examined by a psychologist and a psychiatrist.

Trial was held November 20, 1980. Defendant testified that, in the three or four days prior to the incident, in Great Falls, Harlem and Havre, he had had almost no sleep, but had been drinking steadily and injecting "speed". He also claimed to have smoked one "angel dust", or PCP-soaked, cigarette in Harlem the afternoon preceding the incident, while his girlfriend was in Dodson. He claimed to have smoked part of another "angel dust" cigarette in Havre within a few hours before the attack upon the night clerk. Defendant testified that he had no recollection of the attack, or even of being in the Park Hotel. He said he blacked out after leaving a bar and came to some time later, many blocks away.

Defendant's girlfriend and companion at the time of the Park Hotel incident corroborated his testimony to some extent. She recalled the sleepless days and nights, the heavy drinking and the consumption of speed and other drugs. But she did not recall defendant's possessing or mentioning PCP; nor did she recall going to Dodson while defendant remained in Harlem, the afternoon of February 16, 1980. She did recall defendant's being "really mellow" and "not hyped up" immediately prior to his assault upon the night clerk. She also testified that when the

clerk told defendant she had no rooms, he assumed it was because he was an Indian and asked her, a white girl, to go in and ask if there were rooms. It was after the clerk told the girl there were no rooms that the assault occurred. Defendant's girlfriend did not hear him threaten the night clerk's life; indeed, the only person who testified that defendant had threatened to kill the night clerk was the night clerk herself.

The psychologist, Dr. Stineford, testified that he had examined defendant at four different times and administered six tests designed to determine IQ, brain damage and emotional/psychological patterns and characteristics of the subject. The tests indicated that defendant has a normal IQ and no apparent brain damage, but that he does have a tendency toward depression, hostile acting-out of feelings, and conflict with authority. The results of one test, a sequential-picture-arrangement test, on which defendant's performance was significantly below average (17th percentile), led Dr. Stineford to conclude that defendant has a "specific deficit" in ability to anticipate the consequences of his own behavior. This deficit could result in defendant's inability to have a conscious object to engage in conduct with an understanding of its probable results, particularly in fairly complex situations. Dr. Stineford conceded that his conclusions did not take into account the facts of this case. As a result, Dr. Stineford did not express an opinion as to whether or not the defendant was able to anticipate the consequences of his assault on the hotel clerk. When asked to express an opinion on the effect of drugs upon the actions of the defendant, Dr. Stineford admitted that, because of "the lack of information about the exact drugs, the amount of drugs taken into Mr. Doney's person, without a blood test and a scan to verify that he took any drugs at all, a definite opinion based on scientific evidence, for me, is not possible."

Dr. Earle, a psychiatrist who examined defendant, is fami-

liar with PCP/angel dust. He testified that the drug's clinical use as an anesthetic was discontinued because it sometimes caused sudden, unpredictable episodes of violent and destructive behavior, during which patients could act without a conscious object and without awareness of their conduct. He concluded that defendant's bizarre, violent conduct and his "glassy" eyes were suggestive of angel dust, and that defendant's testimony coupled with his behavior indicated a "reasonable probability" that PCP was involved. Dr. Earle conceded that such behavior could also be related to lack of sleep, the use of alcohol, and an anti-social personality. He admitted that he had no test results and no evidence other than defendant's testimony and behavior to indicate that defendant had taken PCP.

After some negotiation, the jury instructions were accepted without objection by either side.

Defendant moved for a directed verdict of acquittal on the grounds that the "uncontroverted" evidence of defendant's mental defect and drug intoxication at the time the offense was committed showed that defendant was incapable of forming the requisite mental state. The court concluded that there was sufficient disagreement as to defendant's mental state to justify sending the matter to the jury.

Defendant then entered an objection to the verdict forms offered to the jury. The court found that the jury would be adequately instructed and the verdict forms would give them the proper alternatives to consider.

The jury found defendant guilty of attempted robbery and not guilty of attempted deliberate homicide, but guilty of the lesser included offense of aggravated assault.

Subsequently defendant moved for a new trial and alternatively for judgment notwithstanding the verdict. The motions were denied.

Defendant then requested that the court, in considering

whether to add to the defendant's sentence under the persistent felony and mandatory minimum sentence statutes, take into account the evidence indicating significant impairment of defendant's mental capacity at the time of the commission of the crime. The defendant also requested that the court commit him because of his mental disease or defect, as provided in sections 46-14-311 and 46-14-312, MCA. The court denied defendant's request that he be committed.

Judgment was entered on December 8, 1980, sentencing defendant to the Montana State Prison for two ten-year terms to be served concurrently. The mandatory minimum sentences for persistent felony offender and offense involving use of a dangerous weapon were suspended and withheld respectively pursuant to the provisions of section 46-18-222(2), MCA, based upon the court's finding that the defendant's mental capacity at the time of the commission of the offense was significantly impaired although not so impaired as to constitute a defense to the prosecution.

Defendant appeals his conviction and his sentence to this Court.

I

The first issue raised by defendant is whether the District Court erred in denying his motion for a directed verdict of acquittal. Defendant relies primarily upon section 46-14-102, MCA, which states:

> "Evidence that the defendant suffered from a mental disease or defect is admissible whenever it is relevant to prove that the defendant did or did not have a state of mind which is an element of the offense."

and section 45-2-203, MCA, which states in relevant part:

> " . . . An intoxicated or drugged condition may be taken into consideration in determining the existence of a mental state which is an element of the offense."

Defendant maintains that Dr. Stineford's testimony proved defendant suffered from a mental defect which precluded his forming the requisite mental state and Dr. Earle's testimony established

that defendant acted under the influence of PCP, without conscious purpose or awareness. According to defendant, when the State rested its case without answering the experts or rebutting their proof of defendant's mental defect and his drugged, psychotic state, it failed to meet its burden of proving mental state beyond a reasonable doubt. Defendant argues that because he raised a reasonable doubt about mental state, which was "uncontroverted" by further evidence presented by the State, defendant was entitled to a directed verdict of acquittal, and the District Court erred in denying his motion for such directed verdict.

We disagree. In effect defendant is arguing that the judge must make a factual determination whether the State has failed to prove an element of each of the crimes charged beyond a reasonable doubt, and, if he so finds, that he must take the case away from the jury and acquit the defendant. This is not the law in Montana. This Court has repeatedly stated that in criminal cases a directed verdict or motion to dismiss should only be given where there is no evidence on which a jury could base a conviction. State v White (1980), ____Mont.____, 605 P.2d 191, 194-195, 37 St.Rep. 84, 88; State v. Thompson (1978), 176 Mont. 150, 155, 576 P.2d 1105, 1108. The defendant is entitled to an acquittal if reasonable men could not conclude from the evidence taken in the light most favorable to the prosecution that guilt has been proven beyond a reasonable doubt. State v. White Water (Cause No. 81-112, decided October 13, 1981); State v. Perez (1952), 126 Mont. 15, 18, 243 P.2d 309, 310-311. The decision whether to grant a motion to dismiss lies within the sound discretion of the trial court, section 46-16-403, MCA, and will be disturbed on appeal only when abuse of that discretion is shown. White Water, supra; State v. Hart (1981), ____Mont.____, 625 P.2d 21, 28, 38 St.Rep. 133, 139; State v. Smith (1980), ____ Mont.____, 609 P.2d 696, 698, 37 St.Rep. 583, 586. Nor is a

juror required to accept as true the testimony of an expert, even though that testimony is unrebutted. The weight to be given the testimony of the expert witness, and the interpretation of such testimony is for the jury. State v. Hardy (1980), ____Mont.____, 604 P.2d 792, 796, 37 St.Rep. 1, 5; State v. O'Donnell (1972), 159 Mont. 138, 144, 496 P.2d 299, 303.

In this case while both expert witnesses presented testimony which could have led the jury to find that defendant was incapable of forming the requisite mental state, they so qualified their testimony that the jury could well have disregarded it. Both experts stated they had no way of knowing how much PCP or other drugs (if any) the defendant had ingested. Dr. Stineford did not state that his tests proved defendant was incapable of anticipating the consequences of his conduct, only that the defendant's poor performance in a single picture-sequence-arrangement test indicated that he would probably have difficulty anticipating consequences in complex sequences. Dr. Earle admitted that any of several other factors including sleeplessness, drunkenness or an anti-social disposition could have led to defendant's violent outburst against the night clerk.

We do not find the qualified and equivocal testimony of the experts warrants a directed verdict. Nor was that testimony "uncontroverted" as claimed by defendant. There was ample testimony from which the jury could have concluded that defendant had not taken PCP or was not experiencing a PCP-induced violent spell. Defendant's girlfriend could recall no mention of PCP, although she seemed to have known about, even shared, the other drugs he had taken. She did not remember taking a side trip to Dodson and leaving defendant in Harlem where, according to him, he smoked PCP in her absence. There was also evidence from which the jury could have concluded that defendant was fully rational and aware of his conduct. The girlfriend remembered defendant's asking <u>her</u> to ask for a room after he had been refused, to see if

the clerk had denied him a room because he was an Indian. The night clerk recalled defendant's saying he could get across the border to Canada before the police knew what had happened.

In light of the obvious material questions of fact which were unresolved, and the broad discretionary powers of the trial court, we find that the District Court's denial of defendant's motion for directed verdict was entirely proper.

II

The second issue raised by defendant is whether the District Court erred in refusing to overturn the jury's verdict of not guilty of attempted deliberate homicide but guilty of the lesser included offense of aggravated assault and guilty of attempted robbery.

Defendant argues that there was not substantial evidence sufficient to support the jury's verdict. He relies upon the claim that because the defendant had proven his inability to form the necessary mental state by a preponderance of evidence (i.e., convincing "uncontroverted" expert testimony) it was incumbent upon the State to overcome the evidence submitted by the defendant by proving his sanity or capacity, as well as the existence of mental state, beyond a reasonable doubt.

In the first place, as we have stated above, the expert evidence was neither convincing nor uncontroverted; nor was the jury required to give it more weight than any other testimony. Defendant simply did not clearly establish that he suffered from a mental defect or was so drugged or intoxicated as to be incapable of forming the necessary mental state. It is for the jury to decide whether the State has proven each of the elements of the crimes charged beyond a reasonable doubt, unless there is no evidence upon which they can base a conviction, which is certainly not the case here.

In the second place, the jury was fully instructed on (1) the State's responsibility to prove each and every element of each

crime charged beyond a reasonable doubt; (2) the jury's duty to acquit the defendant if they entertained any reasonable doubt upon any fact or element necessary to constitute the crime charged; and (3) the fact that no burden of proof or disproof with respect to any element of the offenses charged rests upon the defendant. It is sufficient that the State prove beyond a reasonable doubt the existence of the mental state that is an essential element of each of the offenses charged. Implicit in the jury's conviction is its conclusion that the defendant possessed the requisite mental state, and therefore had the capacity to form that mental state. The State has met the requirements of Montana law.

Clearly, the jury decided that, in light of all the evidence, the State had met its burden of proof as to attempted robbery and aggravated assault but not attempted deliberate homicide.

The United States Supreme Court and this Court have both stated that a conviction cannot be overturned when the evidence, viewed in the light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573. See also State v. Rodriguez (1981), ____Mont.____, 628 P.2d 280, 283, 38 St.Rep. 578F, 578I; State v. Brubaker (1981), ____ Mont.____, 625 P.2d 78, 81, 38 St.Rep. 432, 436. On appeal this Court views the evidence in the light most favorable to the prevailing party (the State) in the District Court, State v. Pascgo (1977), 173 Mont. 121, 125, 566 P.2d 802, 805.

We find that there was sufficient evidence, fully supported by adequate instructions, for the jury reasonably to convict the defendant.

The second reason defendant gives in support of its charge that the District Court erred in denying a judgment not-

withstanding verdict or, alternatively, a new trial, is that the verdicts are inconsistent, irreconcilable and contrary to law.

Defendant maintains that the only possible reason for acquittal on the charge of attempted deliberate homicide was the jury's finding that due to mental disease or defect, and his drugged, intoxicated condition, defendant was incapable of forming the mental state, proof of which is essential to conviction. According to defendant, this finding should preclude conviction of aggravated assault and attempted robbery since all the acts occurred during the time that defendant was drugged, and his mental defect is a continuing disability.

The question of inconsistency of verdicts is complicated by the court's refusal (over defendant's objection) of a verdict form which stated that defendant was found not guilty of attempted deliberate homicide due to mental disease or defect, but was found guilty of the lesser included offense of aggravated assault. Defendant had argued that, without this verdict form, if the jury acquitted defendant of attempted deliberate homicide but convicted him of the lesser included offense of aggravated assault (as ultimately they did) there would be no way of knowing the reason for the acquittal.

Section 46-14-201(2), MCA, provides:

"When the defendant is acquitted on the ground that due to a mental disease or defect he could not have a particular state of mind that is an essential element of the offense charged, the verdict and the judgment shall so state."

Defendant now argues that his proof of irreconcilable verdicts is hampered by his and the court's ignorance of the reason for the verdict of not guilty of deliberate homicide, and therefore the District Court erred in denying defendant's motion for judgment notwithstanding verdict or, alternatively, for a new trial.

We agree with defendant that the jury's reasons for finding defendant not guilty of attempted deliberate homicide might have been clearer had the above verdict form been included

- 11 -

with the others. We do not agree that its omission prejudices the defendant so as to require the District Court judge to overturn the jury's verdict or grant a new trial.

> "The test for declaring a mistrial was stated by the United States Supreme Court in United States v. Perez (1824), 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed 165:
>
> "'the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject . . . [T]he power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; . . .'" State v. Close (1981), ___Mont.___, 623 P.2d 940, 945-46, 38 St.Rep. 177, 183.

Our function on appeal is to determine whether the trial court abused its discretion in not granting a mistrial. United States v. Jorn (1971), 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543; State v. Close, 623 P.2d at 946, 38 St.Rep. at 183.

If the circumstances reasonably justify the verdict, this Court must assume the existence of every fact which the jury reasonably could have deduced from all the evidence. State v. Meader (1979), ___Mont.___, 601 P.2d 386, 392, 36 St.Rep. 1747, 1755. Here, the verdict of not guilty of attempted deliberate homicide could have resulted from the failure of the State to make its proof as well as from the success of the defense of mental disease or defect. No one but the night clerk testified that defendant threatened her life; indeed defendant's girlfriend and the elderly lady both testified to not hearing such a threat. The knife was small, the wound not major. The jury reasonably could have concluded the State proved beyond a reasonable doubt that defendant meant to frighten and injure the night clerk, but not that he meant to kill her.

In addition, even if the jury did find defendant not guilty of attempted deliberate homicide due to mental disease or defect, the verdicts are not necessarily inconsistent, for the jury could have believed defendant capable of anticipating that his actions

would cause fear and injury, but incapable of anticipating that they might cause death.

There is case law in Montana which, while based on earlier law, is relevant to the question whether a jury could reasonably have concluded defendant was precluded by mental disease or defect from formulating a conscious purpose to kill, yet was still capable of formulating a conscious purpose to frighten or injure.

In State v. McKenzie (1980), ____Mont.____, 608 P.2d 428, 453, 37 St.Rep. 325, 351, this Court stated:

> "The prescribed mental state of 'purposely or knowingly' applies to each element of the crime of deliberate homicide. Section 94-2-103(1) and (2), R.C.M. 1947. To be guilty of deliberate homicide, therefore, one must either have the purpose to kill or know that it was highly probable that his actions would result in the death of another human being. While legal insanity would have completely exonerated defendant from responsibility for his criminal conduct, the diminished capacity defense could be used in a criminal homicide case to show, for example ' . . . that although defendant knew the nature and quality of the act (the assault . . .) and knew that it was wrong' and so was not irresponsible under the legal insanity test, 'he lacked mental capacity to form the intent to kill . . .' A defendant then, due to mental disease or defect precluding him from forming the intent to commit criminal homicide, might be found guilty of the lesser included offense of aggravated assault. See, State v. Booth (1977), 30 Or.App. 351, 567 P.2d 559, 561-62." (Emphasis added.)

We are unwilling to second-guess the jury in these factual matters. There was ample evidence to support any of several findings which would have resulted in the verdict rendered, without inconsistency. The District Court did not abuse its discretion in denying defendant's motion for judgment notwithstanding verdict or, alternatively, for a new trial.

III

The third issue is whether the District Court erred in refusing to commit the defendant to the custody of the director of the Department of Institutions.

The statutes governing conviction and sentencing refer to

several levels of mental impairment, each of which allows for different treatment of a defendant. Because these statutes are easily confused in their application, and because this case involves consideration of several of them, we will discuss them now:

1) A defendant who was demonstrably and incontestably incapable of having the mental state which is an element of the offense charged, whether because of mental disease or defect (section 46-14-102, MCA) or because of his intoxicated or drugged condition(section 45-2-203, MCA), may not be convicted of the offense charged. The State has failed to prove the existence of mental state beyond a reasonable doubt.

A defendant who is acquitted on the ground that, due to a mental disease or defect, he could not have a mental state which is an essential element of the offense charged, shall be committed by court order to the custody of the superintendent of Warm Springs State Hospital. Section 46-14-301, MCA. This section, which is mandatory in wording, does not indicate what the court must do when a defendant charged with several crimes is acquitted of one or more crimes due to mental disease or defect, but is convicted of one or more crimes punishable by imprisonment. If we conclude that every partial acquittal attributable to mental disease or defect mandates commitment to Warm Springs, trial judges soon will be caught between statutes mandating commitment and those mandating imprisonment, when both are applicable. The legislature could not have intended to create such a dilemma. Therefore, "acquittal" within the meaning of section 46-14-301, MCA, must mean total acquittal, such that the defendant would be released but for the commitment provision therein.

2) After a defendant has been convicted, he may seek commitment to the custody of the director of the Department of Institutions for a definite period of time not to exceed the

maximum prison sentence he could have received. Before such commitment will be ordered, defendant must prove to the satisfaction of the sentencing court that "at the time of the commission of the offense of which he was convicted he was suffering from a mental disease or defect which rendered him unable to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." Sections 46-14-311 and 46-14-312, MCA. The sentencing judge is not limited to a consideration of evidence presented at the trial. A determination of the existence of mental disease or defect under these sections rests within the discretion of the sentencing judge.

If the mental disease or defect described in section 46-14-311, MCA, is found, the judge must order the commitment described in section 46-14-312(2). Such a finding and subsequent commitment affects sentencing only, not conviction; it involves a standard of impairment and consideration of evidence which are or may be different from those involved in the conviction.

Section 46-14-312(1), MCA, provides that if the mental disease or defect described in section 46-14-311, MCA, is not found by the sentencing judge, defendant shall be sentenced as provided in Title 46, chapter 18.

3) After defendant has been found not to suffer from a mental disease or defect, the existence of which would have resulted in his commitment, under section 46-14-312, MCA, the court may still consider whether defendant's mental capacity at the time of the commission of the offense was so "significantly impaired" as to bring him within the exception to mandatory minimum sentencing provisions in section 46-18-222. The degree of impairment contemplated in this section is not significant enough to constitute a defense to the prosecution, or to require commitment to the custody of the Department of Institutions. It is to be considered separately from conviction and from any claims made under sections 46-14-311 and 46-14-312, MCA. It is only appli-

cable to bring a convicted defendant under the exceptions set forth in section 46-18-222, MCA.

In the case at bar, the jury found that the State had proven beyond a reasonable doubt the existence of the mental states necessary to a conviction of aggravated assault and a conviction of attempted robbery. Defendant argues that, because the verdict of not guilty of attempted deliberate homicide must have been due to the jury's deciding that defendant suffered from a mental disease or defect, defendant must be committed under section 46-14-301(1), MCA.

As we have stated above, there is ample credible evidence to support the not guilty verdict for reasons other than mental disease or defect. Furthermore, defendant was not acquitted within the meaning of section 46-14-301(1), MCA; he was convicted of a lesser included offense, aggravated assault, and a separate offense, attempted robbery. Section 46-14-301(1), MCA, refers to total acquittal due to mental disease or defect. Its purpose is to prevent the immediate release into society of defendants who pose a threat to themselves or others perhaps because of the very mental disease or defect which necessitated their acquittal. Section 46-14-301(1), MCA, does not mandate defendant's commitment to the superintendent of Warm Springs under the circumstances of this case.

Defendant maintains that the sentencing judge erred in refusing defendant's request that he be committed to the custody of the director of the Department of Institutions pursuant to the provisions of sections 46-14-311 and 46-14-312, MCA. There is no merit in defendant's position. It is true that, if the judge had found that defendant suffered from a mental disease or defect within the meaning of section 46-14-311, MCA, he would have been required to commit defendant to the custody of the director of the Department of Institutions. But the determination whether defendant does suffer from such mental disease or defect lies

within the discretion of the sentencing judge, after his evaluation of the trial evidence and any other evidence he may deem necessary. The sentencing judge was not persuaded that defendant suffered from a mental disease or defect within the meaning of section 46-14-311, MCA. He acted well within his discretion in denying defendant's request that he be committed pursuant to section 46-14-312(2), MCA.

The trial judge was not in error in denying defendant's request that he be committed rather than imprisoned.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

Mr. Justice John C. Sheehy:

I concur in the result.

_____
Justice