No. 85-198

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

JERRY ELWIN TIBBITTS,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Joel G. Roth, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

John Keith, Great Falls, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Kimberly Kradolfer, Asst. Atty. General, Helena
Patrick L. Paul, County Attorney, Great Falls, Montana

Submitted on Briefs: Jan. 8, 1987

Decided: March 10, 1987

Filed: MAR 1 0 1987

*Ethel M. Harrison*
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Appellant Jerry Tibbits was found guilty of deliberate homicide by bench trial in the District Court of the Eighth Judicial District, Cascade County. Mr. Tibbitts was then sentenced by the District Court to serve 100 years in the Montana State Prison. We affirm.

The issues are:

1. Did the District Court err when it found that Mr. Tibbitts acted knowingly in causing the death of the decedent?

2. Did the District Court abuse its discretion when sentencing Mr. Tibbitts?

In July 1984, Mr. Tibbitts and several other men worked for three or four hours at a supply store and then purchased some beer and drank it behind a Great Falls grocery store. The decedent joined their group and got in a discussion with Mr. Tibbitts over some beer and cigarettes. An argument ensued and Mr. Tibbitts picked up a bottle and hit the decedent twice with the bottle. Mr. Tibbitts then kicked the decedent and attempted to light his hair while he was stretched out on the ground. Two eye witnesses testified to this assault.

Three Great Falls police officers and an ambulance crew all arrived at the scene within seconds of each other and Mr. Tibbitts was read the Miranda warning. At least four law enforcement officers heard Mr. Tibbitts confess to the killing at the scene and at the hospital where he was taken for a blood-alcohol sample. One of the officers also testified that Mr. Tibbitts specifically stated that he knew what had happened and that he had hit the victim with a beer bottle.

Mr. Tibbitts testified during the bench trial that the decedent began grabbing beer and cigarettes from him and that

2

he became "enraged" and began hitting and kicking the decedent. Mr. Tibbitts testified that he had been previously diagnosed as schizophrenic and that he had previously committed himself to mental institutions. Mr. Tibbitts also testified that he did not act in self defense.

The doctor who performed the autopsy testified that the decedent had bruises and lacerations, a broken nose, and a fractured sternum from a blow to the chest which almost separated the decedent's breast bone into two pieces. The doctor stated that the cause of death was a laceration to the left atrium which caused bleeding into the pericardium sac surrounding the heart. This laceration was caused by a blunt force blow to the chest, such as the one which fractured the decedent's sternum.

A staff psychiatrist at Warm Springs State Hospital who examined Mr. Tibbitts testified that the defendant suffered from paranoid schizophrenia but that he did understand what was happening around him and was capable of assisting in his defense. The psychiatrist also testified that Mr. Tibbitts could become psychotic at times but that in his opinion the defendant's state of mind did fit within the "knowingly" definition of § 45-2-101(33), MCA.

The District Court concluded as a matter of law:

> 2. That the State did prove beyond a reasonable doubt and to a moral certainty that the defendant committed the crime of Deliberate Homicide, a Felony, under MCA section 45-5-201, by knowingly causing the injuries which caused the death of Kent Blackburn.
> 3. That the evidence of the defendant's mental disease or defect showed that he did have the particular state of mind, that being knowledge under MCA section 45-2-101(33), when the crime occurred.
> 4. That the defendant's mental condition, while not rising to a defense of the crime charged and

3

proved, can be considered at sentencing under MCA
section 46-14-311 and section 46-14-312.

As a result of the initial sentencing order, a question was
raised regarding the defendant's ability to appreciate the
criminality of his conduct and to conform his conduct to the
requirements of the law at the time of the offense. This
Court remanded the case to the District Court with instruc-
tions to determine for purposes of sentencing the mental
status of Mr. Tibbitts under § 46-14-311 and -312, MCA. The
lower court then entered an order clarifying the sentencing
order which stated:

> The Court now clarifies the Sentencing Order by
> stating that, pursuant to Section 46-14-311 MCA,
> the defendant, at the time of the commission of the
> offense of which he was convicted (Deliberate
> Homicide, a felony), was suffering from a mental
> disease or defect, namely paranoid schizophrenia,
> but that said mental disease or defect did not
> render him unable to appreciate the criminality of
> his conduct or render him unable to conform his
> conduct to the requirements of law.

The District Court sentenced Mr. Tibbitts to 100 years in the
Montana State Prison.

I

Did the District Court err when it found that Mr.
Tibbitts acted knowingly in causing the death of the
decedent?

The standard of review is that set forth in Jackson v.
Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61
L.Ed.2d 560, 573:

> [W]hether, after viewing the evidence in the light
> most favorable to the prosecution, any rational
> trier of fact could have found the essential ele-
> ments of the crime beyond a reasonable doubt.
> (Emphasis in original.)

4

This standard was adopted by Montana in State v. Rodriguez (Mont. 1981), 628 P.2d 280, 283, 38 St.Rep. 578F, 578I. Using this standard, we consider Mr. Tibbitts' specific contentions.

First, Mr. Tibbitts maintains that the evidence does not support the District Court's determination that he acted knowingly in causing the death of the decedent. The deliberate homicide statute, § 45-5-102, MCA, provides that Mr. Tibbitts must have acted knowingly or purposely to be convicted of deliberate homicide. The District Court found that Mr. Tibbitts had acted knowingly when he caused the death of the decedent. The "knowingly" definition found at § 45-2-101(33) provides:

> [A] person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware of his conduct or that the circumstance exists. A person acts knowingly with respect to the result of conduct described by a statute defining an offense when he is aware that it is highly probable that such result will be caused by his conduct. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person is aware of a high probability of its existence. Equivalent terms such as "knowing" or "with knowledge" have the same meaning.

Mr. Tibbitts argues that he was unable to form the requisite criminal state of mind because he suffered from the mental disease of paranoid schizophrenia and was in a psychotic state at the time of the offense. Finally, Mr. Tibbitts maintains that the District Court's sentencing order was deficient. This last argument was specifically addressed by this Court when we remanded with instructions to the District Court to clarify its sentencing order. The District Court then wrote a clarification order. As a result, we find no basis for this argument.

5

The District Court concluded that Mr. Tibbitts met the knowingly requirement of § 45-2-101(33), MCA, that he was able to appreciate the criminality of his conduct, and that his mental disease or defect did not negate this ability to appreciate the criminality of his conduct. The psychiatrist from Warm Springs State Hospital testified Mr. Tibbitts understood what was happening around him, was capable of assisting in his defense, and that in his opinion Mr. Tibbitts knew that it was highly probable that he would become involved in violent actions if he drank. Finally, the psychiatrist testified that in his opinion Mr. Tibbitts' state of mind did fit within the "knowingly" definition of § 45-2-101(33), MCA, when he committed the homicide. In addition, several law enforcement officers who were at the scene of the homicide right after it occurred testified that Mr. Tibbitts confessed to the crime. One officer specifically testified Mr. Tibbitts stated he knew what he had done. The District Court had all the evidence and testimony before it when making the determination that Mr. Tibbitts acted knowingly when he caused the decedent's death. Using the Jackson test, we find that "any rational trier of fact could have found the essential elements of [deliberate homicide] beyond a reasonable doubt." We therefore affirm the District Court on this issue.

II

Did the District Court abuse its discretion when sentencing Mr. Tibbitts?

Mr. Tibbitts argues that the District Court abused its discretion when imposing his sentence by failing to properly consider the mental disease or defect at the time of the offense. Relying on § 46-14-312(2), MCA, and State v. Korell (Mont. 1984), 690 P.2d 992, 41 St.Rep. 2141, the defendant maintains that he should be placed in Warm Springs State

6

Hospital due to his mental defect. Although the District Court found that Mr. Tibbitts was suffering from a mental disease or defect at the time of the commission of the offense, it also found that the mental disease or defect "did not render him unable to appreciate the criminality of his conduct or render him unable to conform his conduct to the requirements of the law." As this Court stated in State v. Doney (Mont. 1981), 636 P.2d 1377, 1385, 38 St.Rep. 1707, 1716:

> Before such commitment (to Warm Springs) will be ordered, defendant must prove to the satisfaction of the sentencing court that "at the time of the commission of the offense of which he was convicted he was suffering from a mental disease or defect which rendered him unable to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." Sections 46-14-311 and 46-14-312, MCA. The sentencing judge is not limited to a consideration of evidence presented at the trial. A determination of the existence of mental disease or defect under these sections rests within the discretion of the sentencing judge.

A defendant can be sentenced to imprisonment if the sentencing judge finds that the defendant was able to appreciate the criminality of his conduct or conform his conduct to the requirements of the law. See Korell, 690 P.2d at 996. Mr. Tibbitts argues that the District Court failed to consider his psychotic mental state at the time of the commission of the offense and thus his prison sentence should be vacated with instructions for him to be placed at Warm Springs.

We affirm the District Court's conclusion that Mr. Tibbitts was able to appreciate the criminality of his conduct or conform his conduct to the requirements of the law at the time of the commission of the offense in accordance with Doney and Korell. A police officer testified that Mr. Tibbitts seemed to understand what was going on around him

7

following the incident. Mr. Tibbitts also testified in a calm and understanding manner of the events leading up to the attack and the examining psychiatrist testified that he believed Mr. Tibbitts fit within the "knowingly" definition of § 45-2-101(33), MCA, when he committed the homicide. Accordingly the requirements of §§ 46-14-311 and -312, MCA, have been met.

We affirm the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

8