FLIGHT ENGINEERS INTERNATIONAL ASSOCIATION, AFL–CIO, CAL CHAPTER, an unincorporated association, Appellant,

v.

CONTINENTAL AIR LINES, INC., a Nevada corporation; and The Air Line Pilots Association, International, AFL–CIO, an unincorporated association, Appellees.

No. 17071.

United States Court of Appeals Ninth Circuit.

Oct. 23, 1961.

Rehearing Denied Dec. 7, 1961.

I. J. Gromfine, Washington, D. C., Charles K. Hackler, Los Angeles, Cal., and William B. Peer, Washington, D. C., for appellant, Zimring, Gromfine & Sternstein, Washington, D. C., Brundage, Hackler & Flaum, Los Angeles, Cal., of counsel.

Holland & Hart, Patrick M. Westfeldt, Denver, Colo., Gibson, Dunn & Crutcher and William F. Spalding, Los Angeles, Cal., for appellee Continental Air Lines.

Leland, Plattner & Kalik, Beverly Hills, Cal., Henry Weiss, New York City, for Air Line Pilots Ass'n International A.F. L.-C.I.O.

Before HAMLEY, JERTBERG and MERRILL, Circuit Judges.

HAMLEY, Circuit Judge.

In this action Flight Engineers International Association, AFL-CIO, CAL Chapter, (CAL Chapter) sought a declaratory judgment and injunctive relief against Continental Air Lines, Inc., (Continental) and The Air Line Pilots Association, International, AFL-CIO, (ALPA).[1] The action arose under the Railway Labor Act, 45 U.S.CA. § 151 et seq., and the district court had jurisdiction under 28 U.S.C.A. §§ 1331, 1337.

Plaintiff sought a judgment declaring that a contract entered into between Continental and ALPA on May 29, 1959, is void and unenforceable to the extent that it purports to apply to rates of pay, rules or working conditions of persons performing the duties of flight engineers, however described. It sought a preliminary and permanent injunction enjoining defendants from giving effect to the May 29, 1959 contract, or any renewal, modification or extension thereof, or any similar agreement, so as to affect the rates of pay, rules, working conditions, job assignments, seniority or other con-

1. The letters "CAL" in the name of plaintiff are used to indicate "Continental Air Lines."

ditions of employment of persons performing the flight engineering function employed or to be employed by Continental.[2]

The suit was filed on June 1, 1960. On the following day plaintiff moved for a preliminary injunction in accordance with the prayer of its complaint. A district court hearing was held thereon on June 14, 1960, at which time affidavits and briefs were received and oral argument was had, no evidence being offered. An order, supported by findings of fact and conclusions of law, was entered on July 11, 1960, denying the motion for a preliminary injunction. Plaintiff appeals. We have jurisdiction under 28 U.S.C.A. § 1292(a) (1).

On June 21, 1961, while the appeal was pending in this court and prior to oral argument therein, Continental moved for dismissal of the appeal for mootness. A similar motion was filed on the same day by ALPA. The motions were opposed by appellant and we heard oral argument thereon at the same time that the appeal was argued on the merits.

Several grounds are advanced by Continental and ALPA why the appeal and the case should be dismissed as moot. Among these are the following: (1) CAL Chapter, the sole plaintiff and appellant, is no longer in existence; (2) the dispute involved in the lawsuit has been settled; and (3) CAL Chapter represents no present employees of Continental and any former employees whom it purports to represent have accepted termination pay and are now estopped to claim a right of employment.

Pertinent to these grounds for dismissal the affidavits of record establish facts which we now summarize. At the time the suit was commenced on June 1, 1960, CAL Chapter, the sole plaintiff and appellant, was an unincoporated association functioning as a labor organization. As an affiliated local chapter of Flight Engineers International Association, AFL-CIO (International), it then represented flight engineers employed by Continental. At that time, however, there was no collective bargaining agreement in effect between CAL Chapter and Continental. The agreement between them had expired on May 1, 1960, when the parties were unable to agree upon cross-proposals for changes therein as proposed in their respective reopening notices served in accordance with 45 U.S.C.A. § 156.

On June 30, 1960, while this case was pending in the district court, CAL Chapter called and commenced a strike against Continental. Twenty-two of the flight engineers employed by Continental, constituting what is conceded to be the complete membership of CAL Chapter, participated in the strike. All twenty-two of the strikers were replaced by Continental, their employment with Continental being thereby terminated. In view of these circumstances Continental on August 27, 1960, notified CAL Chapter that it no longer recognized that union as the bar-

2. The injunction sought would also (1) restrain any change in the manner of assigning persons to perform the duties of flight engineers as such assignments were made prior to May 29, 1960, except changes made as a result of collective bargaining between Continental and CAL Chapter; (2) restrain interference with any of the employees of Continental in the designation of a collective bargaining agent; (3) restrain defendants from dealing with each other as representatives of flight engineers however described; (4) restrain Continental from refusing to recognize CAL Chapter as the exclusive bargaining representative of persons performing duties of flight engineers; (5) restrain defendants from putting into effect any change in rates of pay, rules or working conditions of employees performing duties of flight engineers unless and until Continental should give the written notice and observe the conditions contained in § 6 of the Railway Labor Act, 45 U.S.C.A. § 156; (6) require Continental to restore to their jobs without loss of seniority or other rights all flight engineers employed by Continental on May 28, 1960; and (7) require Continental to recognize and deal with CAL Chapter as the exclusive representative of all persons employed by the company who were performing the function of flight engineer, however described.

gaining agent for any of Continental's employees.

While this strike was in progress several of the striking flight engineers entered into negotiations with representatives of ALPA regarding ways and means of ending the strike and merging the flight engineers into ALPA, which union would then represent all Continental flight deck crew members.

A tentative agreement was formulated after which a meeting of CAL Chapter was held on October 7, 1960. After accepting the resignation of G. B. Iverson as president of the organization, the meeting adjourned to a later hour the same day, such adjourned meeting to be held at a different place. At the reconvened meeting a motion was made that CAL Chapter be dissolved in accordance with article I, section V, of its constitution and by-laws, and that all strike activities be ended and the flight engineers be merged with ALPA. According to the minutes of the meeting, the motion carried by a vote of fifteen for and one abstaining.

Article I, section V, of the constitution of CAL Chapter provided that a two-thirds majority of the active members was required for dissolution. There being twenty-two such members, fifteen votes were required to dissolve. One of these fifteen votes, however, was that of M. L. Kenyon which was voted by a proxy given to F. L. San Juan.

CAL Chapter contends that this proxy was illegally voted for the reason that Kenyon had not given San Juan his proxy for the purpose of voting for dissolution of the chapter. CAL Chapter also contends that the vote to dissolve was invalid for the additional reason that notice was not given of the meeting at which such vote was had. Continental and ALPA have submitted counter affidavits as to each of these matters, but disputed questions of fact concerning that meeting are presented which cannot be determined on the record before us.

By the same vote as on the motion for dissolution a motion was passed direct-ing the acting president to notify International, National Mediation Board, ALPA, Continental, legal firms retained on behalf of CAL Chapter both past and present, and other interested parties, of the dissolution of CAL Chapter and the other action described above. Under this motion all parties so notified were to be "relieved and/or directed to terminate all efforts or actions relative to CAL Chapter." A second reconvened meeting was held on the night of October 7, 1960, at which a motion was carried directing the officers of CAL Chapter to act as trustees, as set forth in the constitution, "for the disposal of assets, payment of bills, etc." This motion was carried unanimously, fourteen members being present in person and one by proxy.

In accordance with the action taken at the first reconvened meeting of October 7, 1960, notice was given on that day to the attorneys of CAL Chapter that all differences between it, Continental, and ALPA had been completely resolved and that the strike against Continental had been terminated. These attorneys were also instructed to enter into stipulations with counsel for Continental and ALPA to dismiss or otherwise dispose of all pending litigation, which would include the instant case. These attorneys, however, took no action to dismiss such litigation.

A strike settlement agreement based on the tentative agreement previously reached was prepared and executed by ALPA and some of the twenty-two striking flight engineers. Whether it was actually signed by all of them is in dispute. This agreement was then presented to and executed by Continental on October 10, 1960. Pursuant to this agreement, and between October 7 and 10, 1960, seven former flight engineers elected option (c) in section 1 of this agreement under which they elected not to return to work and were paid severance pay in the amount of $10,000 each. These payments were made and accepted. During the same period the remaining fifteen former flight engineers elected option (b) in section 1 of this agreement

under which they were re-employed by Continental as pilots.[3] The latter returned to work about October 11, 1960, and have continued to work for the company since that time.

The "selection of option" form signed by all twenty-two contains the statement: "The undersigned being * * * a signator to the Supplemental Agreement between Continental Air Lines, Inc., and ALPA dated October 10, 1960. * * *" That supplemental agreement expressly recites that CAL Chapter has been dissolved and that they have terminated the strike and have taken steps to terminate all outstanding litigation between CAL Chapter and Continental.

ALPA and Continental subsequently entered into collective bargaining negotiations which resulted in a new collective bargaining agreement between them dated February 28, 1961. This agreement, which will remain in effect until August 31, 1962, covers all of Continental's flight deck crew members. The ALPA-Continental agreement of May 29, 1959 has expired and is no longer in effect.

In the meantime, on October 10, 1960, the Master Executive Committee of International announced the establishment of a trusteeship over CAL Chapter and notified all CAL Chapter members of this action. In this notice it was stated that the attempt to dissolve CAL Chapter, terminate the litigation against Continental, and to end the strike was in violation of the constitution and by-laws of CAL Chapter and International. International later notified all CAL Chapter members of a hearing in New York City on November 16, 1960, to be held on the question of the establishment of the trusteeship.

Prior to November 16, 1960, the constitution and by-laws of International contained no provision relating to the establishment of a trusteeship over a subordinate body thereof. On that date, however, the Master Executive Board of International amended the constitution of International by adding a new section 16 to article V thereof, providing in detail for the establishment of trusteeships under stated circumstances.

The hearing referred to above was held as scheduled, and on January 4, 1961, the hearing committee issued its report approving the trusteeship and recommending that it be continued. The hearing committee also recommended that the trustees be instructed to continue to prosecute all pending litigation on behalf of CAL Chapter. Pursuant to the procedures set out in the newly-added constitutional provision respecting trusteeships the recommendations of the hearing committee were approved by the Master Executive Board on March 21, 1961.[4]

With these facts before us we turn to a consideration of the first ground advanced by appellees why this appeal and this case must be deemed moot. This ground is that plaintiff and appellant, CAL Chapter, is no longer in existence. If this is true the appeal and case is necessarily moot, since there would no longer be a "case or controversy" within the meaning of Article III, Section 2 of the Constitution. Federal courts have

---

3. While several of the striking flight engineers now deny that they signed the supplemental agreement or authorized anyone to sign for them, no one denies that he signed a (b) or (c) option. None of those who signed a (c) option and pursuant thereto received severance pay in the sum of $10,000 has indicated any desire to revoke his selection of that option or has made any offer of restitution. In the affidavit of former flight engineer Glenn B. Iverson, however, it is stated: "I do not consider it [the signed option (c)] binding upon me or dispositive of my rights against Continental. By signing option (c) I did not intend to waive my rights to reinstatement to my former position with Continental under terms and conditions of employment negotiated by the CAL Chapter. * * *"

4. The trustees of CAL Chapter filed reports with the Commissioner of the Bureau of Labor-Management Reports of the United States Department of Labor, concerning the establishment of the trusteeship on October 10, 1960. On May 9, 1961 the trustees filed a semiannual report with the commissioner.

jurisdiction only where a case or controversy is involved. Muskrat v. United States, 219 U.S. 346, 356, 31 S.Ct. 250, 55 L.Ed. 246.

According to the minutes of the meeting of CAL Chapter held on October 7, 1960, that chapter was dissolved at that time by the requisite number of votes of the members. The minutes also indicate that a motion was passed by the same vote directing that International be advised of the dissolution. It is undisputed that such notice was given on that date.

The facts just recited establish that CAL Chapter was dissolved on that day unless other facts are properly before us which establish that such dissolution was invalid or ineffective. Facts which assertedly demonstrate the invalidity or ineffectiveness of that dissolution are presented by CAL Chapter acting through trustees appointed under a trusteeship established by International.

But appellees Continental and ALPA contend that the purported trusteeship was not validly established, and since International is not a separate party and has no interest in this case except as trustee, no question as to the invalidity of the dissolution is properly before us. Appellees point to 29 U.S.C.A. § 462 which provides that trusteeships shall be established and administered by a labor organization over a subordinate body "only in accordance with the constitution and bylaws of the organization which has assumed trusteeship * * *." Appellees call attention to the fact, conceded by CAL Chapter, that on October 7, 1960, when CAL Chapter voted to dissolve, and on October 10, 1960, when International purported to establish a trusteeship, the constitution and by-laws of International contained no provision relating to trusteeships.

CAL Chapter meets this argument by contending that International had the "inherent" right to establish a trusteeship because the attempted dissolution threatened the "natural right of self-preservation" of International. CAL Chapter also argues that, authorized by the amendment to International's constitution made on November 16, 1960, whereby trusteeships were provided for, the Master Executive Board at a later date ratified and continued the trusteeship initially based on inherent right.

Whatever "inherent" power an international union formerly may have had to impose a trusteeship where the international constitution or by-laws made no provision therefor, it has had no such power since the enactment of the Labor-Management Act of 1959, Public Law 86–257, 73 Stat. 531. Section 302 thereof, 29 U.S.C.A. § 462 expressly provides that such trusteeships shall be established and maintained "only in accordance with the constitution and bylaws of the organization which has assumed trusteeship * * *."

If confirmation is needed of the specific limitation thus intended to be placed upon internationals, it is sufficient to refer to Senate Report No. 187 to accompany S. 1555, which became the Labor-Management Act of 1959. The committee therein stated that it concurred in the select committee's recommendation that there should be a "limitation on the right of internationals to place local unions in trusteeship." 2 U.S.Code Cong. and Adm. News, 86th Cong., 1st Sess., 1959, p. 2333.[5]

If it be assumed, however, that an international has such an "inherent" right notwithstanding section 462, that right could at most be exerted for the purpose of preventing the subordinate body from violating some obligation it had accepted by virtue of its relationship with the international. But on the record before us it is established that in dissolving on Oc-

---

5. The Senate committee also said, in analyzing the trusteeship provisions of the act:

"Section 202 [later 302] of the bill sets up two standards for testing the legality of a trusteeship.

"First, the trusteeship must conform to the constitution and bylaws of the labor organization. * * *" (2 U.S.Code Cong. and Adm.News, 86th Cong., 1st Sess., 1959, p. 2334).

tober 7, 1960, CAL Chapter violated no such obligation.

The only provision of International's constitution and by-laws concerning the dissolution of chapters is section 4 of article V which provides in part: "No chapter shall be disbanded or withdrawn by its own motion as long as the majority of the members in good standing favor its continuance. * * *" It is undisputed that at the meeting of CAL Chapter held on October 7, 1960, at least fourteen of a total chapter membership of twenty-two voted for dissolution, thus fully meeting the requirement of section 4 of article V of International's constitution.

■ It may be that CAL Chapter also obligated itself to International to dissolve only in the manner provided in the chapter's constitution and by-laws. In that event consideration should be given to CAL Chapter's contention that one less than the two-thirds vote required by the chapter constitution and by-laws voted for dissolution, and that notice of the meeting at which dissolution was voted was not given in the manner required by the chapter's constitution and by-laws.

But if there was any initial invalidity in this regard the same has been cured by the unanimous ratification of the dissolution evidenced by the acceptance, not later than October 10, 1960, of one or the other of the options offered under the supplemental agreement of October 10, 1960. As before noted, these options contained the recital that the person signing his name is "a signator to the supplemental agreement. * * *" That supplemental agreement expressly recites that CAL Chapter has been dissolved. The described circumstances, considered together, constitute a unanimous ratification of the dissolution proceeding which in our view overcomes any possible question as to the validity of those proceedings. See Harker v. McKissock, 7 N.J. 323, 81 A.2d 480, 485.

On November 16, 1960, the constitution of International was amended to permit trusteeships. But this newly-added provision was applicable only to chapters in existence on that date. As before noted, CAL Chapter had been dissolved not later than October 10, 1960.

■■ We conclude that International, acting through its purported trusteeship of CAL Chapter, or otherwise, has no standing to question the validity of the dissolution of CAL Chapter. In view of that dissolution, the sole plaintiff and appellant no longer exists.

For the reasons stated, this appeal and case is now moot. We think it is also moot for the two additional reasons urged by appellees as set out earlier in this opinion.

The appeal is dismissed and the case is remanded with directions to dismiss the same.