No. 88-263

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

KENNETH TRASK,

        Defendant and Appellant.


APPEAL FROM: District Court of the Thirteenth Judicial District,
                In and for the County of Yellowstone,
                The Honorable Diane Barz, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Moses Law Firm; Jay F. Lansing, Billings, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Paul D. Johnson, Asst. Atty. General, Helena
        Harold Hanser, County Attorney, Billings, Montana
        Curtis L. Bevolden, Deputy County Atty., Billings


Submitted on Briefs: Aug. 26, 1988

Decided: October 27, 1988

FILED

'88 OCT 27 AM 10 01

CLERK
MONTANA SUPREME COURT

Filed:

_Ethel M. Harrison_

———————————————————
Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Kenneth Trask, the defendant, appeals his conviction by the District Court of the Thirteenth Judicial District, Yellowstone County for the offense of felony assault, § 45-5-202(2)(b), MCA. We affirm.

The sole issue presented on appeal is whether sufficient evidence existed to sustain the District Court's verdict convicting Kenneth Trask of felony assault under § 45-5-202(2)(b), MCA.

In January, 1987, Bonnie Gill and her fiance, Robert Aukshun, resided together in his trailer house on Highway 312, near Huntley, Montana. Gill had previously been married to Kenneth Trask, the defendant, from June 13, 1981 and until the dissolution of their marriage on July 12, 1985.

On January 23, 1987, Gill and Aukshun retired between 9:00 p.m. and 9:30 p.m. At approximately 10:00 p.m., Gill and Aukshun heard their puppy barking and then shortly thereafter, knocking on their trailer door. Both looked out the windows but were unable to see either lights or a vehicle. Aukshun then opened the front door a "little bit" and looked out, but was unable to see anyone. He did, however, notice that the safety chain on the screen door had been unlatched and the screen door, which had been latched and secured earlier in the evening, was wide open. Aukshun then poked his head out the front door, looked around, and noticed a man crouched down near the door, aiming a rifle at him. Aukshun quickly slammed the door, moved away from behind the door, and as he was attempting to lock the door, six shots were fired in rapid succession through the trailer door. A subsequent investigation revealed that the firearm

used was a Ruger Mini-14 .223 semi-automatic rifle belonging to Trask and that the height and angle at which the bullets entered the door would have hit a person between the midsection and just below the hip, depending on where the person was standing.

Immediately after the shooting, Aukshun, in fear for his life, got his handgun and attempted to telephone the sheriff. The telephone, although working properly earlier in the evening, was dead. Aukshun then ran approximately 1/8 mile to his nearest neighbor's home and called the Yellowstone County Sheriff's Office. In the meantime, Gill remained in the trailer, lying frightened in the bathtub and in the dark.

Deputy Steven Harms of the Yellowstone County Sheriff's Office answered the call. The investigation revealed that the telephone line to the trailer had been cut with a sharp object, both before and after the line entered the junction box located on the outside of the trailer. The T.V. cable had also been cut. Footprints, later identified as belonging to Trask, were discovered both beneath the telephone box and where Aukshun testified that the man with the rifle had been kneeling. Gill told Deputy Harms that she thought that Trask was the one who fired the rifle and then relayed to Deputy Harms that she was once married to Trask and that Trask had told her that if she ever began dating other men he would kill her and the particular man involved.

Four days after the shooting, deputies located Trask at the Parkside Lodge Alcohol Treatment Center near Denver, Colorado. On January 27, 1987, following a Miranda warning, Detective Jensen obtained a statement from Trask. In his statement, Trask admitted that he remembered shooting at Aukshun's trailer door on January 23, 1987 and burying his Ruger Mini-14 .223 rifle in some rocks near his sawmill because of his concern about firing it at Aukshun's trailer

door. Upon following Trask's directions, Jensen was able to locate the buried Ruger Mini-14 .223 rifle along with several boxes of .223 ammunition. The Ruger Mini-14 .223 rifle, the ammunition, and the six cartridge casings collected near the Aukshun's trailer door on January 23, 1987, were sent to a FBI laboratory for comparison. The FBI report concluded that the six cartridge casings were fired from Trask's Ruger Mini-14 .223 rifle.

Trask also stated in his statement that prior to the shooting, he had spent the day drinking at a tavern and that he was intoxicated when he drove to Aukshun's trailer. He stated that he bought the Ruger Mini-14 .223 rifle approximtely two weeks prior to January 23, 1987 and that he recalled taking the rifle with him to the Aukshun's trailer. Trask acknowledged that he carried wire-cutting tools in his pickup and that he knew his ex-wife, Gill, was living at the trailer when he fired the six .223 rounds into it. He also recalls parking on the southside of the railroad tracks and driving, after the shooting, to a local tavern to cash a check and purchase more beer.

Trask was charged by information on March 4, 1987, with the offense of felony assault, § 45-5-202(2)(b), MCA. Trask pled not guilty and on April 30, 1987, filed his notice, pursuant to § 46-14-201(1), MCA, indicating he would rely on a mental disease or defect to prove that he did not have the particular state of mind which is an essential element of the offense charged. The District Court granted Trask's motion for a psychiatric examination and he was subsequently examined by Dr. Joseph Rich, a psychiatrist.

Trask waived his right to a jury trial and the matter was tried before the District Court of the Thirteenth Judicial District. After the trial, the District Court filed its finding of facts and conclusions of law on October 2,

1987, finding that Trask had the requisite mental state and therefore finding him guilty of the offense of felony assault under § 45-5-202(2)(b), MCA. Following a presentence investigation, the court sentenced Trask to eight years in the Montana State Prison for the offense of felony assault along with a consecutive two year term, pursuant to § 46-18-221, MCA, because Trask used a firearm in committing the assault. The court subsequently ordered both sentences suspended subject to certain conditions. Trask appealed his conviction on February 16, 1988.

The sole issue presented on appeal is whether sufficient evidence existed to sustain Kenneth Trask's conviction of felony assault under § 45-5-202(2)(b), MCA.

Trask argues that the State failed to prove beyond a reasonable doubt that Trask had the requisite mental state to commit the offense of felony assault, § 45-5-202(2)(b), MCA, when he fired the six shots at Aukshun's trailer door. In arguing this contention, Trask primarily relies upon the opinion of the expert witness, Dr. Joseph Rich. After evaluating Trask, Dr. Rich concluded that Trask suffered from a mental disease, resulting from major depression and alcohol related problems, and therefore was incapable of acting knowingly or purposely. Trask then argues that the State failed to offer any testimony that would rebut Dr. Rich's opinion regarding Trask's mental state and therefore failed to prove beyond a reasonable doubt that Trask committed the offense of felony assault. We disagree.

The statute under which Trask was charged and convicted is § 45-5-202(2)(b), MCA, which reads that "[a] person commits the offense of felony assault if he purposely or knowingly causes . . . reasonable apprehension of serious bodily injury in another by use of a weapon . . . ." The requisite mental state under this statute is either purposely

or knowingly. The definition for 'purposely' includes when a person's conscious object is to engage in a particular conduct or to cause a particular result. Section 45-2-101(58), MCA. The definition for 'knowingly' includes a person who is aware that it is highly probable that a particular result will be caused by his conduct. Section 45-2-101(33), MCA.

In the present case, the record reveals that approximately two weeks before the shooting, Trask bought the .223 caliber Ruger Mini-14 semi-automatic rifle that he used in the shooting incident. Detective Jensen testified that the ammunition used in the shooting was probably a full metal jacket variety, considered ideal for penetrating, especially an object such as a trailer house door. On January 23, 1987, the day of the shooting, Trask voluntarily consumed excessive amounts of alcohol before and after the shooting incident. Before engaging in the shooting, Trask parked his truck approximately 286 feet from Aukshun's trailer and on the opposite side of an eight foot high railroad embankment. The truck therefore was not visible from Aukshun's trailer. Trask then traversed the 286 feet to the trailer and proceeded to cut the telephone line leading into the trailer and just outside the junction box. The telephone line, however, was also cut inside the junction box, which required unscrewing a small screw to remove the cover from the box.

The record also indicates that Trask unlatched and opened the screen door, such that anyone appearing at the door opening would be fully exposed. Trask had his rifle aimed at the door when Aukshun opened it. Immediately after Aukshun slammed the door closed, Trask fired the six shots into the door. Trask then fled the scene, buried the rifle and ammunition, and subsequently checked himself into an alcohol treatment center near Denver, Colorado. In addition,

the record reveals that he knew that his ex-wife, Gill, lived in the trailer with Aukshun and that he had previously made threats that if she ever began dating other men he would kill her and the particular man involved.

Trask's contention that Dr. Rich's opinion that he, Trask, was incapable of acting purposely or knowingly was uncontroverted is unfounded in light of the above evidence. Upon reviewing this issue, a conviction may not be overturned when the evidence presented, viewed in the light most favorable to the prosecution, would permit a rationale trier of fact to find the essential elements necessary to establish the offense. State v. Lundblade (Mont. 1986), 717 P.2d 575, 577, 43 St.Rep. 732, 733-34 (citing Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560). This standard applies regardless of whether a judge, as in the present case, or a jury is acting as the trier of fact. See, e.g., State v. Tibbitts (Mont. 1987), 733 P.2d 1288, 1290-92, 44 St.Rep. 439, 441-42. The trier of fact therefore is responsible for determining whether a defendant has the requisite mental state to be convicted under the statute charged. State v. Doney (Mont. 1981), 636 P.2d 1377, 1382, 38 St.Rep. 1707, 1712-13; State v. Hardy (1980), 185 Mont. 130, 135-36, 604 P.2d 792, 795-96; State v. Jackson (1979), 180 Mont. 195, 205, 589 P.2d 1009, 1015 (citing State v. Madden (1954), 128 Mont. 408, 416, 276 P.2d 974, 978). Mental state may be inferred from circumstantial evidence, including a defendant's actions and evidence found surrounding the alleged offense. Hardy, 185 Mont. at 136-37, 604 P.2d at 796; Jackson, 180 Mont. at 205, 589 P.2d at 1015 (citing Madden, 128 Mont. at 416, 276 P.2d at 978). Further, the interpretation of an expert witness's opinion and the amount of weight given to that opinion compared to the other evidence presented is within the province of the trier of

fact. Doney, 636 P.2d at 1381, 38 St.Rep. at 1711; Hardy, 185 Mont. at 136, 604 P.2d at 796.

The crucial determination for the trier of fact in this case is whether Trask acted purposely or knowingly. While Dr. Rich's opinion may tend to establish that Trask suffered from a mental disease, the evidence is overwhelming that Trask nonetheless acted purposely or knowingly in connection with the shooting incident. The evidence presented allowed the trier of fact to determine that Trask acted purposely or knowingly when he attempted to shoot Aukshun, as well as when he performed successfully all the actions necessary that brought him to Aukshun's trailer. Fleeing the scene afterwards and burying the rifle and ammunition is also evidence that demonstrates he acted purposely or knowingly.

Upon reading the District Court file, including the transcripts and the letters submitted by family, friends, acquaintances, and psychiatrists, we acknowledge that the file is replete with information supporting Trask and his progress towards becoming a contributing member of society. The District Court, which suspended Trask's sentence subject to conditions, including refraining from visiting places where intoxicating beverages are the chief items of sale and continuing with necessary treatment, apparently took note of Trask's pursuits and accomplishments.

The evidence and the law, however, supports the District Court. We therefore hold that substantial credible evidence exist to support the District Court's finding that Trask, beyond a reasonable doubt, purposely or knowingly caused reasonable apprehension of serious bodily injury in another.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices