No. 89-483

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA,

   Plaintiff and Respondent,

 -vs-

KIM CHARLES HOLMAN,

   Defendant and Appellant.

APPEAL FROM: District Court of the First Judicial District,
      In and for the County of Broadwater,
      The Honorable Henry Loble, Judge presiding.

COUNSEL OF RECORD:

  For Appellant:

    William F. Hooks; Hooks & Budewitz, Townsend, Montana

  For Respondent:

    Hon. Marc Racicot, Attorney General, Helena, Montana
    Patti Powell and James Yellowtail, Asst. Attorney's
    General, Helena, Montana
    John T. Flynn, Broadwater County Attorney, Townsend,
    Montana

Submitted on Briefs: Jan. 11, 1990

Decided: February 6, 1990

Filed:

_____
     Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Mr. Holman appeals his conviction on a DUI charge following a bench trial in the First Judicial District Court, Broadwater County, Montana. We affirm.

Appellant presents four issues for review:

1. Did the trial court err in considering a presumption that appellant was under the influence of alcohol while driving, based on blood alcohol concentration test results which were not related back to the time of operation?

2. Did the trial court abuse its discretion in rejecting the opinions of the defense's expert witness?

3. Did the trial court err in relying on expert witness testimony predicated upon a dissimilar pre-trial experiment?

4. Is the evidence sufficient to sustain the conviction?

On March 18, 1988, Kim Charles Holman worked his shift at Helena's Columbia Paint Company. Immediately after work, around 4:30 p.m., he went to Hap's Place in Helena with his nephew and admittedly drank four or five beers. He left Hap's about 7:00 p.m. for his home in Townsend. On the way out of Helena, Holman purchased two more cans of beer. Holman testified at trial that prior to being stopped he had only a few sips out of one can. However, at the time of his arrest he stated that he had consumed seven beers.

At approximately 7:30 p.m., after dark, Highway Patrolman Larry Bean clocked the Holman vehicle approaching him at 77 miles per hour. Because he had to turn around, Patrolman Bean pursued

2

Holman for two miles with his flashing lights on before he caught up to the Holman vehicle. When he did catch up to Holman, Bean observed the vehicle swerve across the road to the left and back. Holman then tried to pull over on a wide place in the road, but misjudged, and drove off the road finally stopping in a barrow pit.

Holman testified that he had deliberately delayed pulling over when he saw the patrol car's flashing lights. He was trying to light a cigarette, fasten his seat belt, and hide the beer. Holman thought the lighted cigarette would mask the alcohol on his breath and he did not want the patrolman to see the opened and unopened beer containers.

Patrolman Bean testified that when Holman stepped out of his vehicle it was obvious that he had been drinking. His breath smelled strongly of alcohol, his eyes were bloodshot, his face was flushed, and he had to lean against his vehicle for support. Bean administered field sobriety tests, including the horizontal gaze nystagmus test, the walk and stand test and the one-legged stand test. Holman failed all these tests. He staggered, almost fell and could not perform some of the tests. While Holman admitted that he had had trouble with the field sobriety tests he attributed his poor performance to nervousness and to dizziness from smoking the cigarette.

Patrolman Bean arrested Holman and took him to the Townsend Sheriff's office. At the Sheriff's office Holman was booked, given his Miranda rights, interviewed and given an Intoxilyzer 5000

breath alcohol level test. Holman tested at .178; a person is presumed intoxicated at a test level of .10.

Holman was convicted of driving under the influence of alcohol following a jury trial in Justice Court No 1, Broadwater County. He appealed to the District Court and received a trial de novo. Holman expressly waived a jury trial.

In his defense, Holman contended that his appearance of intoxication and his .178 alcohol level test were caused by ingesting paint fumes while at work. Some of the compounds in the traffic paint he worked with on March 18, 1988, are Toluene, Hexane, Naptha, mineral spirits and Xylol. Toluene, in particular, can cause the appearance of intoxication. The appellant's expert testified that in his opinion the Intoxilyzer 5000 is not specific for alcohol but would respond to a wide number of chemicals including the above-mentioned substances which would affect the breath alcohol test results. The State's expert testified that in his opinion the Intoxilyzer 5000 will not register Hexane, Naptha, Xylol or mineral spirits as part of a breath alcohol level test. It is theoretically possible that the Intoxilyzer 5000 might register the presence of Toluene, but if it did the machine would signal an invalid test or register an interference. Thus, the State's expert testified that the Intoxilyzer 5000 is specific for alcohol and would not register other substances as alcohol.

I and III

Because we find issues II and IV dispositive, we need not

4

discuss issues I and III.

## II

Appellant argues that the District Court abused its discretion in rejecting the defense expert's opinion. We disagree.

At trial, appellant contends that his poor performance on the field sobriety tests resulted from ingesting paint fumes at work rather than consuming five to seven beers in an hour and one-half after work. As proof, the defense offered expert testimony to support the inference that paint fumes caused appellant's elevated breath alcohol level. The record discloses, however, that the defendant's and State's experts disagreed as to whether the Intoxilyzer 5000 could register Toluene, Hexane, Naptha, Xylol or mineral spirits as alcohol. The defendant's expert opined that it could, while the State's expert opined that it could not. The District Judge as trier of fact resolved that conflict in the State's favor.

Evaluation of expert testimony lies "within the province of the trier of fact." State v. Trask (Mont. 1988), 764 P.2d 1264, 1267, 45 St.Rep. 1988, 1992. In the case at bar the District Judge evaluated the two experts' testimony and found the State expert's testimony more credible. The function of the trier of fact is to make such determinations of credibility and weight when confronted with conflicting evidence. We cannot disturb those determinations. The District Court Judge, in fulfilling his role as trier of fact, did not abuse his discretion in finding the State's expert more

credible.

IV

Appellant also argues that the State presented insufficient evidence to sustain a conviction. Again, we disagree.

Upon review, "a conviction may not be overturned when the evidence presented, viewed in the light most favorable to the prosecution, would permit a rationale [sic] trier of fact to find the essential elements necessary to establish the offense. (Citations omitted.)" Trask, 764 P.2d at 1266.

At trial, the District Judge, in denying defendant's motion to dismiss, summarized the State's evidence, excluding the Intoxilyzer 5000 test, as follows:

> [W]e have field sobriety tests, we have the admission of the defendant he had been drinking, that he had seven beers. We have testimony of the police officer the man was staggering, that he almost fell down, that there was a high odor of alcohol and as I said a moment ago he admitted he had at least seven beers. And the police officer's testimony relates to the time when he was arrested and the time he was driving. He jogged his vehicle to the left on the highway, came back apparently seeking a place to park, misjudged, drove down into the barrow pit with his automobile. All of these actions are consistent with the actions of an intoxicated driver, a man driving while under the influence of alcohol.

Thus, even disregarding the Intoxilyzer 5000, test, sufficient evidence exists to convict appellant.

Affirmed.

John Conway Harrison
Justice

6

We concur:

_____
Chief Justice

_____

_____

_____
Justices

7