DA 13-0831

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 334

FILED

December 23 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0831

WYO-BEN, Inc.,

      Plaintiff and Appellee,

  v.

HARLAN BIXBY, M.D., as Trustee of the
995 Separate Property Trust; RYAN K.
BIXBY, PARKER BIXBY, HAYDEN BIXBY,

      Defendants and Appellants.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                 In and For the County of Yellowstone, Cause No. DV 11-0568
                 Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Stephen Dolan Bell, Dorsey & Whitney LLP, Missoula, Montana

          Ben D. Kappelman; Thomas P. Swigert, Dorsey & Whitney LLP,
          Minneapolis, Minnesota

      For Appellee:

          Mark D. Parker; Brian M. Murphy, Parker, Heitz & Cosgrove, PLLC,
          Billings, Montana

Submitted on Briefs:  September 24, 2014
Decided:  December 23, 2014

Filed:

_____
                        Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Several minority shareholders of Wyo-Ben, Inc., appeal the judgment of the Thirteenth Judicial District Court in Wyo-Ben's favor. The court dismissed Appellants' oppression claim, and later ruled that Appellants were not entitled to be paid for their class B shares under Montana's dissenters' rights statute. Appellants also appeal the court's decision regarding the value of their class A shares. We address the following issues on appeal:

1. *Whether Appellants' claims are moot because the Bixby family did not all appeal together.*

2. *Whether the District Court erred by granting Wyo-Ben's motion to dismiss the oppression claim.*

3. *Whether Appellants are entitled to be paid for all of their shares, or only for the shares that were materially and adversely affected.*

4. *Whether the court clearly erred in valuing the class A shares.*

¶2 We affirm in part, reverse in part, and remand for a new award consistent with this opinion.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 Wyo-Ben is a closely-held family corporation that was created in the 1950s by Rockwood Brown Sr. to locate, mine, process, and distribute sodium bentonite products. Today, Wyo-Ben has annual sales of about fifty million dollars and produces over three dozen products, primarily for use in the oil and gas industry.

¶4     Wyo-Ben incorporated in 1963, and the corporation's shares initially were split equally by Rockwood Brown Sr.'s four children. One of the four redeemed his stock and relinquished his ownership stake. By 1977, the three remaining children—Barbara Bixby, Keith Brown, and Rockwood Brown Jr.—owned Wyo-Ben, each with an equal one-third interest. They agreed to restrict the transfer of shares to members of their respective families, a restriction that remains in place today.

¶5     In 1983, Wyo-Ben amended its Articles of Incorporation to separate its shares of capital stock into two classes, designated class A and class B shares. The shares existing prior to the amendment were converted to class A shares, and the new class B shares were distributed to existing shareholders at a ratio of ten class B shares for each class A share. Each class of share held equal equity in the company, but only class A shares held voting rights.

¶6     Over the years, several disputes developed between the Bixby family and the two Brown families. First, Harlan Bixby discovered that the Brown families had formed a company called Wind River. Wind River was formed for the same purpose as several other companies formed between all three families: to locate and stake mining claims to sell back to Wyo-Ben. Wind River used information obtained from Wyo-Ben to locate the claims. The Browns received significant income from Wind River, but excluded the Bixby family. When the Bixby family discovered Wind River and protested that they were being excluded unfairly, the Browns refused to include them. The Bixby family

3

ultimately decided not to bring a claim against Wyo-Ben or the two Brown families, hoping to avoid further conflict.

¶7     A second dispute involved executive compensation. Harlan Bixby alleged in an affidavit that the Browns leveraged their status as majority shareholders to pay themselves a "secret bonus payment" in the amount of $579,924. David Brown, Wyo-Ben's chief executive officer, refuted Harlan's accusations in an affidavit and concluded that the Board "did not cap bonus payments as Harlan asserts . . . ." Like the Wind River dispute, executive compensation is not directly at issue here. Appellants maintain only that the dispute provides context for their oppression claim.

¶8     In response, the Browns introduced a past grievance of their own. In the early 1990s, Wyo-Ben went through several rounds of refinancing to recover from debts. One bank required personal guarantees from the families, but the Bixby family refused. Although the Browns were able to satisfy the bank with other personal guarantees—and Wyo-Ben's refinancing has nothing to do with the issues in this case—the Bixby family's refusal found its way into this litigation on several occasions.

¶9     Despite the families' past disagreements, by all accounts, Wyo-Ben is a thriving company that has emerged through challenging times to its present strong financial position due to competent leadership. In 2009, Wyo-Ben restructured its board of directors to be more independent of the three families. The company adopted amendments preventing four of the seven board members from being connected with any of the three families. Although there were some reservations, all three families supported

4

this restructuring. The parties agree that the independent directors selected for Wyo-Ben's board had considerable experience, competence, and integrity.

¶10 Until recently, the three family branches carefully maintained roughly equal class A voting shares. After the latest redemption offer by Wyo-Ben in 2010, the Bixby family owned 34.31% of Wyo-Ben's class A stock, the Rockwood Brown family owned 34.1%, and the Keith Brown family owned about 31%. While the Bixby family retained the most class A shares of any of the families, it also had redeemed some of its class B stock. By 2010, the Bixby family owned less total stock than the other families, roughly 25% of Wyo-Ben.

¶11 On November 19, 2010, Wyo-Ben's board of directors approved a plan to give class B shares the right to vote. The four independent directors agreed that converting the class B shares to voting shares would be good for the business. The Bixby family objected, believing that the plan was intended to diminish their status in the company by diluting their voting rights.

¶12 The board solicited proposals to lessen the impact of the plan on the Bixby family. In a telephonic conference on January 20, 2011, the Bixby family expressed concerns about their ability to maintain a presence on the board of directors and to block major corporate actions. The board crafted several resolutions to address the Bixby family's concerns, including a proposal to amend the articles of incorporation to require an 80% affirmative vote to approve major corporate action instead of the two-thirds vote required by statute, § 35-1-823(5), MCA, and a proposal to change the by-laws to guarantee each

5

of the three families a seat on the board. The Bixby family deemed the proposals inadequate and sent Wyo-Ben a notice of intent to demand payment for their shares in accordance with § 35-1-830, MCA.

¶13 On February 18, 2011, Wyo-Ben held its annual meeting of shareholders. Four resolutions comprised the agenda: the reclassification of shares and three remedial resolutions designed as concessions to the Bixby family. The remedial measures included lowering the threshold of votes required to block major corporate action and assuring each family a seat on the board of directors. The Bixby family voted against all four resolutions in order to protect their right to dissent.

¶14 The measure to reclassify the class B shares passed. The reclassification resulted in an overall decrease to the Bixby voting rights from 34.31% to 24.59%, with a corresponding increase in the total voting rights of the two Brown families from 65.9% to 75.41%. All three remedial resolutions failed.

¶15 After the vote, the Bixby family sent a § 35-1-832, MCA, payment demand and deposited all of their shares—both class A and class B—with Wyo-Ben. Wyo-Ben paid $1,541 for each class A share, but refused to pay for class B shares. The dissenters sought payment for their class B shares and also contested Wyo-Ben's valuation of the class A shares. The dissenters sought payment for both classes at $1,850 per share.

¶16 Wyo-Ben timely filed a petition with the District Court under § 35-1-838, MCA, seeking a declaration that the dissenters were not entitled to any payment for their class B shares and contesting the dissenters' demand for a higher value for the class A shares.

6

Wyo-Ben stated in its complaint that it would "not resist a claim that the Defendants' Class A shares have been materially and adversely affected."

¶17 The Bixbys opposed Wyo-Ben's request for declaratory judgment, and sought a declaration that they were entitled to payment for both classes of shares at the higher value. They also filed a counter-claim asserting that Wyo-Ben's decision to dilute their voting rights constituted oppressive conduct under § 35-1-938, MCA. Wyo-Ben moved for summary judgment on the entire case, and the Bixbys moved for partial summary judgment on their claim that the dissenters' rights statute required Wyo-Ben to purchase their class B shares. The court denied both motions.

¶18 In September 2012, the District Court convened a jury trial on the oppression claim and heard four days of testimony. After the parties rested their cases, but before the jury had returned a verdict, the court dismissed the Bixbys' oppression claim under Rule 41(b), M. R. Civ. P., on the basis that there was insufficient evidence to support a finding of oppression by Wyo-Ben. In November 2013, the District Court found in favor of Wyo-Ben on the right to dissent claim, holding that the dissenters were not entitled to payment for their class B shares because those shares were not materially and adversely affected. The court issued a decision and adopted Wyo-Ben's proposed findings of fact and conclusions of law.

¶19 The Bixbys appealed the District Court's decisions regarding oppression and the right to compensation for the class B shares, and its findings regarding the value of the

shares. On February 3, 2014, three members of the Bixby family voluntarily dismissed their claims. Harlan, Ryan, Parker, and Hayden Bixby continue their appeal.

## STANDARDS OF REVIEW

¶20 In an equitable action involving dissenters' rights, a district court's findings of fact must be upheld unless they are clearly erroneous. *Hansen v. 75 Ranch Co.*, 1998 MT 77, ¶ 20, 288 Mont. 310, 957 P.2d 32. We review conclusions of law to determine whether the court's interpretation of the law is correct. *Hansen*, ¶ 20.

## DISCUSSION

¶21 *1. Whether Appellants' claims are moot because the Bixby family did not all appeal together.*

¶22 "An issue becomes moot when the circumstances present at the outset of the action have ceased to exist, or if the court is unable to grant effective relief or to restore the parties to their original positions due to an intervening event or change in circumstances." *In re Osorio Irrevocable Trust*, 2014 MT 286, ¶ 8, 376 Mont. 524, 337 P.3d 87. "[C]ourts lack jurisdiction to decide moot issues insofar as an actual 'case or controversy' no longer exists." *In re Osorio*, ¶ 8 (quoting *Greater Missoula Area Fedn. of Early Childhood Educ. v. Child Start, Inc.*, 2009 MT 362, ¶ 23, 353 Mont. 201, 219 P.3d 881). Mootness is a threshold issue that we must resolve before addressing the merits of a dispute. *In re Osorio*, ¶ 7.

¶23 Wyo-Ben argues that this appeal is moot because only four members of the Bixby family challenge the District Court's decision on appeal. Wyo-Ben argues that the Bixby

family had standing only as a group, that they brought their oppression claim under "a theory of group standing," and that their group status was fundamental to their oppression and dissenters' rights claims.[1] Wyo-Ben relies on a single case that has no applicability here. *Flight Eng'rs Int'l Ass'n. v. Cont'l Air Lines, Inc.*, 297 F.2d 397 (9th Cir. 1961). In *Flight Eng'rs*, a chapter of a union appealed an adverse ruling, but the union dissolved before the appeal was decided. Because the party appealing no longer existed, the court dismissed the appeal as moot. *Flight Eng'rs*, 297 F.2d at 403.

¶24 Each Bixby family member individually pursued the claim because of his or her membership in a larger group that allegedly was being oppressed. The Bixby family is not a legal entity with the power to bring a claim. The Bixby family members alleged that historically they have voted as a block, and they referred to themselves collectively as the "Bixby family," but they are not required to appeal together because they did not bring the counterclaim as a single entity. Wyo-Ben brought this declaratory judgment action against individual shareholders, requesting a declaration that the dissenters' rights statutes do not require Wyo-Ben to compensate each shareholder for his or her class B

---

[1] Wyo-Ben improperly combines standing arguments with its mootness arguments. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180, 120 S. Ct. 693, 703-04 (2000). Although we have declined to address it as a separate issue, Wyo-Ben also contests Appellants' standing independently of its mootness claim: in a single paragraph, with no legal analysis or relevant citations, Wyo-Ben argues that "the Bixby group" lacks standing because they have been paid for their class A shares. There is no such entity as "the Bixby group," and Wyo-Ben's arguments to this effect fail. In addition, Wyo-Ben's payment of a disputed amount for some shares does not deprive Appellants of oppression or dissenters' rights claims if a higher amount or greater number of shares should have been paid.

shares. The shareholders counterclaimed, arguing that each shareholder, individually, was oppressed by Wyo-Ben's dilution of their family's historical voting block.

¶25 Wyo-Ben's argument that Appellants require the participation of their entire family is mistaken. Any party who lost before the District Court and elected not to participate in the appeal will not benefit from any outcome favorable to Appellants, but the issues appealed still exist and adequately may be addressed with respect to the appealing parties. We hold that this appeal is not moot.

¶26 *2. Whether the District Court erred by granting Wyo-Ben's motion to dismiss the oppression claim.*

¶27 Appellants brought a single counterclaim alleging oppression. Section 35-1-938(2)(b), MCA, provides that a district court may dissolve a corporation in a proceeding brought by a shareholder if it is established that "the directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent."

¶28 We have defined oppression as "harsh, dishonest or wrongful conduct and a visible departure from the standards of fair dealing which inure to the benefit of [the] majority and to the detriment of the minority." *Pankratz Farms, Inc. v. Pankratz*, 2004 MT 180, ¶ 76, 322 Mont. 133, 95 P.3d 671 (citing *Fox v. 7L Bar Ranch Co.*, 198 Mont. 201, 209, 645 P.2d 929, 933 (1982)). Oppressive conduct "depends on the special nature of close corporations as understood by the statute, relevant commentators, and case law[,]" and may require analysis of fiduciary duties or assessment of "the reasonable

10

expectations of minority shareholders in light of the particular circumstances of each case." *Fox*, 198 Mont. at 209-10, 645 P.2d at 933. Oppression is more easily found in a closely-held family corporation. *Fox*, 198 Mont. at 209, 645 P.2d at 933.

¶29 Oppressive conduct is ground for judicial dissolution of a corporation. Section 35-1-938(2)(b), MCA. Appellants do not seek Wyo-Ben's dissolution; they instead seek one of the alternative remedies available under § 35-1-939(1), MCA, allowing the court to "make any order to grant the relief other than dissolution as, in its discretion, it considers appropriate[.]" The remedy Appellants request is an order "providing for the purchase at fair value of shares of any shareholder, either by the corporation or by other shareholders" in an action filed on the grounds enumerated in § 35-1-938, MCA. Section 35-1-939(1)(d), MCA.

¶30 Appellants argue that "in the midst of substantial tension between the families," Wyo-Ben granted voting rights to the class B shares to deliberately weaken the Bixbys' position in the company. Appellants allege that their voting rights collectively were diluted from 34.31% to 24.59%, depriving them of their "historical and rightful voice in the affairs of the company, including the ability to elect two directors." They also argue that the District Court rejected their oppression claim "without any analysis whatsoever."

¶31 As a preliminary matter, Wyo-Ben argues on appeal that Appellants failed to challenge certain key facts—in particular the District Court's finding that the Bixby family's damages were "self-inflicted." Wyo-Ben asserts that this failure renders the issue of remand for another trial on the oppression issue an "idle act," citing *In re*

11

*Marriage of Pfeifer*, 1998 MT 228, ¶ 18, 291 Mont. 23, 965 P.2d 895.  We disagree. Appellants plainly challenge the court's decision, including its determination that they somehow created their own damages by refusing Wyo-Ben's resolutions.

¶32   Appellants argue that this Court has been careful to avoid limiting what is intended to be a broad remedy for a variety of wrongful actions by majority shareholders. We have recognized that those in control of a corporation have a general duty to avoid oppressing shareholders.  *Pankratz*, ¶ 76.  Nevertheless, the "controlling group should not be stymied by a minority stockholder's grievances if the controlling group can demonstrate a legitimate business purpose and the minority stockholder cannot demonstrate a less harmful alternative."  *Daniels v. Thomas, Dean & Hoskins, Inc.*, 246 Mont. 125, 137-38, 804 P.2d 359, 366 (1990).

¶33   Although we define oppression broadly, the Bixbys have failed to establish that the alleged harms are severe enough to sustain their claim.  In *Pankratz*, we affirmed a district court's determination that oppression did not exist as a matter of law where a corporation made reasonable efforts to negotiate with a minority shareholder, and the minority shareholder failed to present workable alternatives.  *Pankratz*, ¶¶ 77-78.  The District Court in this case found that Wyo-Ben and the majority shareholders "did not operate in such a harsh, dishonest, or wrongful manner as to be oppressive."  *Pankratz*, ¶ 77.

¶34   The evidence shows that Wyo-Ben articulated reasonable and legitimate business reasons for giving the class B shares the right to vote.  The independent board offered its

opinion that the move was in the company's best interests and Wyo-Ben made considerable efforts to accommodate the Appellants' concerns. Appellants do not dispute these facts.

¶35 While Appellants contend that allowing the class B shares to vote was not in their best interests, Appellants have not demonstrated clear error in the District Court's finding that the move was not intended to have the oppressive effects they alleged. Appellants argue that they lost their "historical right" to vote together as a family. But Appellants were not in a voting trust and were under no obligation to vote together. No individual Appellant possessed the kind of control over the company that the Appellants suggest was possessed by the Bixby family; by aggregating the effect to all of the Bixbys' collective voting rights, they overstate the significance of the harm that occurred. The evidence demonstrates that all shareholders agreed to the appointment of an independent board; that the independent board articulated legitimate business reasons for the decision to enfranchise all shares; and that the board advanced reasonable proposals to protect the Bixbys' interests in the control of Wyo-Ben. Appellants could not sustain an oppression claim on the basis that they were damaged individually simply because they historically voted their shares as a block.

¶36 Appellants additionally contend that the District Court unconstitutionally deprived them of a jury trial on their oppression claim. They claim that, "[a]t the very least," they are entitled to a jury trial to determine whether the majority shareholders engaged in wrongful conduct or breached their fiduciary duties, and to determine the value of the

shares. However, oppression claims are equitable in nature and do not require a jury. *See Hansen*, ¶ 20; *Pankratz*, ¶ 78; *Daniels*, 246 Mont. at 134, 804 P.2d at 364. The statutory remedies for oppression—judicial dissolution; cancellation or alteration of corporate articles or bylaws; directing or prohibiting specific acts of the corporation; and the purchase of shares—all are matters of equity. Sections 35-1-938, -939, MCA; *see Thisted v. Tower Mgmt. Corp.*, 147 Mont. 1, 14, 409 P.2d 813, 820 (1966) ("By its very nature, intracorporate problems arising in a close corporation demand the unusual and extraordinary remedies available only in a court of equity."). Moreover, we have noted previously that alternative remedies to dissolution are based upon a court's equitable powers. *Maddox v. Norman*, 206 Mont. 1, 15, 669 P.2d 230, 237 (1983). "Courts sitting in equity are empowered to determine all the questions involved in the case and to do complete justice; this includes the power to fashion an equitable result." *Blaine Bank of Montana v. Haugen*, 260 Mont. 29, 35, 858 P.2d 14, 18 (1993). There is "[n]o right to a jury trial for a purely equitable action . . . ." *City of Great Falls v. Forbes*, 2011 MT 12, ¶¶ 18-19, 359 Mont. 140, 247 P.3d 1086.

¶37 Finally, Appellants observe correctly that the District Court made a procedural error by dismissing their oppression claim under M. R. Civ. P. 41(b). This rule provides for involuntary dismissal for failure to prosecute or comply with the rules or a court order and does not apply here. Because Appellants were not entitled to a jury on their equitable claims for relief, however, the District Court's decision to withdraw the claim from the jury was correct. "We may uphold a judgment on any basis supported by the record,

14

even if the district court applied a different rationale." *Rooney v. City of Cut Bank*, 2012 MT 149, ¶ 25, 365 Mont. 375, 286 P.3d 241. The District Court correctly decided that Appellants did not provide a legally sufficient evidentiary basis to find oppression. We affirm the court on this issue.

¶38 *3. Whether Appellants are entitled to be paid for all of their shares, or only for the shares that were materially and adversely affected.*

¶39 Montana's right to dissent statute provides that "[a] shareholder is entitled to dissent from and obtain payment of the fair value of the shareholder's shares" in the event of specified corporate actions, including:

> an amendment of the articles of incorporation that materially and adversely affects rights in respect of a dissenter's shares because it . . . excludes or limits the right of the shares to be voted on any matter or to cumulate votes, other than a limitation by dilution through issuance of shares or other securities with similar voting rights[.]

Section 35-1-827(1)(d), MCA. Shareholders who wish to assert their dissenters' rights may not vote their shares in favor of the proposed action. Section 35-1-830(1)(b), MCA.

¶40 Preliminarily, we note that the District Court incorrectly determined that Wyo-Ben's grant of voting rights to class B shares qualified for the exemption found in § 35-1-827(1)(d)(iv), MCA, which expressly allows dilution of voting rights through "the issuance of shares or other securities with similar voting rights." Here, there was a change to existing stock, but no "issuance of shares or other securities" and the exemption does not apply.

15

¶41 Wyo-Ben sought a declaratory judgment that Appellants' class B shares were not "materially and adversely" affected, making them ineligible for reimbursement under the dissenters' rights statute. Wyo-Ben concedes that the class A shares were adversely and materially affected, but it maintains that only voting shares have dissenters' rights. Wyo-Ben highlights language in the statutes indicating that voting shares are required: § 35-1-827, MCA, contemplates changes that affect "the right of the shares to be voted on any matter or to cumulate votes," and § 35-1-830(1)(b), MCA, requires that shareholders avoid voting their shares in favor of the changes. Based on this language, Wyo-Ben maintains that Appellants are not entitled to compensation for non-voting class B shares.

¶42 Appellants argue that Wyo-Ben misinterprets the statutes because it is the shareholder, not the shares, who possesses the right to dissent. Section 35-1-827, MCA, does not limit to voting stock its statement that a dissenting shareholder is entitled to "obtain payment of the fair value of the shareholder's shares." Rather, Appellants suggest that the statute allows recovery of the fair value of *all* the shareholder's shares when *some* of the shares are materially and adversely affected. Appellants also argue that Wyo-Ben should pay for both types of shares because the shares now are identical.

¶43 Both parties' arguments have some merit. The dissenters' rights subsection at issue here clearly requires an adverse and material effect "in respect of" the shares. Wyo-Ben has conceded an adverse and material effect to the class A shares, but argues that the class B shares have not been adversely affected by gaining the right to vote. The

16

District Court held that the changes to the class B shares were not adverse under Montana's statute. Nearly all of the Appellants gained in total voting power because they owned significantly more class B stock than class A stock, and it appears that at least one of Appellants does not own any class A stock.

¶44 Although the statute is not a model of clarity, we agree with Appellants' arguments that—if a shareholder demonstrates a material and adverse change to his or her individual voting rights "in respect of" all the shares owned by that shareholder—the shareholder is entitled to redemption of all shares, not only those shares that were directly and adversely affected. Section 35-1-827, MCA, requires payment of "the fair value of the shareholder's shares" once an adverse and material effect has been proven. It is not the shares, but the shareholder, who is entitled to recover under the statute. Section 35-1-827, MCA, does not distinguish among classes of shares. Section 35-1-827(1)(d), MCA, suggests that a shareholder's shares must be examined as a whole to determine if the shares are "materially and adversely affect[ed.]" If there is such an effect, then the shareholder is entitled to be paid out. But if the net effect on shares is not adverse, then the shareholder is not entitled to relief. The plain language of the statute does not limit payment solely to the affected shares. An adverse effect to a shareholder's shares, considering all of the shares of both classes owned by that shareholder, entitles that shareholder to payment for all shares.

¶45 This reading of the statute is consistent with its intended purpose, to allow affected dissenting shareholders to extricate themselves from a company. James Cox, Thomas

Hazen, and F. Hodge O'Neal, *Corporations*, vol. III, § 22.24 (observing that early motivations to provide remedies to dissenting shareholders included providing "a means to exit for shareholders" and "afford them a way out in case of fundamental changes"); *see Pro Finish USA, LTD v. Johnson*, 63 P.3d 288, 293 (Ariz. Ct. App. 2003) ("The dissenter buyout system, with its standard of fair value, contemplates that dissenters may elect to realize their pro rata share of the whole corporate value."). "The basic concept of fair value under a dissenters' rights statute is that the stockholder is entitled to be paid for his or her 'proportionate interest in a going concern.'" *Brown v. Arp & Hammond Hardware Co.*, 141 P.3d 673, 683 (Wyo. 2006) (quoting *In re 75,629 Shares of Common Stock of Trapp Family Lodge, Inc.*, 725 A.2d 927, 931 (Vt. 1999)) (other citations omitted).

¶46 We agree with the District Court that shareholders who owned only class B stock or gained voting power through the resolution cannot demonstrate an adverse and material effect within the meaning of the statute. These Appellants are not entitled to recovery under Montana's dissenters' rights statute for the value of their class B shares, and we affirm the District Court on this point. One of the Appellants, however, meets the requisite standard. Granting class B shares the right to vote materially and adversely affected the rights in respect of Harlan Bixby's shares because, when considering all of the shares he owns, the change limits his right to vote his shares. Enfranchising the class B shares diluted Harlan Bixby's voting interest from 18% to 10.75%—a decrease of 40%. We therefore reverse the District Court and remand for determination of the value

18

of class B shares and an award of the value of all of his shares to Harlan Bixby. We affirm the court's decision with respect to Ryan, Parker, and Hayden Bixby.

¶47 *4. Whether the court clearly erred in valuing the class A shares.*

¶48 Appellants argue that the District Court clearly erred in its valuation of the class A stock. Dissenting shareholders are entitled to the fair value of their shares. Section 35-1-827, MCA. "'Fair value', with respect to a dissenter's shares, means the value of the shares immediately before the effectuation of the corporate action to which the dissenter objects, excluding any appreciation or depreciation in anticipation of the corporate action unless exclusion would be inequitable." Section 35-1-826(4), MCA.

¶49 In reviewing a district court's findings of fact for clear error, this Court first reviews the record to determine if the findings are supported by substantial evidence. Next, the Court determines whether the district court misapprehended the effect of the evidence. Finally, the Court reviews the record to determine whether it has "the definite and firm conviction that a mistake has been committed." *Skelton Ranch, Inc. v. Pondera Co. Canal & Reservoir Co.*, 2014 MT 167, ¶ 27, 375 Mont. 327, 328 P.3d 644.

¶50 Substantial evidence supports the District Court's valuation of the class A shares. The District Court in this case adopted Wyo-Ben's proposed findings verbatim,[2] but also included a separate decision providing, in its words, "an overview of basically what happened." The court opined that Wyo-Ben's Proposed Findings and Conclusions

---

[2] We have discouraged this practice. *In re Marriage of Jensen*, 193 Mont. 247, 252-53, 631 P.2d 700, 703 (1981).

provide "greater detail, fully cover all the issues, and are supported by a preponderance of the evidence and the applicable law." Wyo-Ben's expert testified at trial about his qualifications and valuation methods, and he provided a 111-page report on Wyo-Ben's financial condition and its methods of valuing the stock. The court heard testimony from experts on both sides, and concluded that the appraisal commissioned by Wyo-Ben was more reliable.

¶51 The court did not misapprehend the effect of the evidence. "Evaluation of expert testimony lies 'within the province of the trier of fact.'" *State v. Holman*, 241 Mont. 238, 241, 786 P.2d 667, 669 (1990) (quoting *State v. Trask*, 234 Mont. 380, 385, 764 P.2d 1264, 1267 (1988)). The trial court therefore is entitled to weigh the credibility of experts and make "determinations of credibility and weight when confronted with conflicting evidence." *Holman*, 241 Mont. at 241, 786 P.2d at 669. Further, "[a] factfinder remains free to disregard an expert's testimony." *Willis v. Fertterer*, 2013 MT 282, ¶ 35, 372 Mont. 108, 310 P.3d 544 (citing *Stave v. Estate of Rutledge*, 2005 MT 332, ¶ 21, 330 Mont. 28, 127 P.3d 365). Having reviewed the record and the District Court's rationale, this Court is not left with the definite and firm conviction that a mistake has been made. We affirm the District Court's decision regarding the value of the class A stock.

## CONCLUSION

¶52 We affirm the District Court's dismissal of Appellants' oppression claim, reverse its decision regarding the dissenters' rights claim to the extent that it denied payments for

Harlan Bixby's class B shares, affirm its decision denying class B payments to the remaining Bixby Appellants, and affirm its valuation of the class A shares. We remand for a new award consistent with this opinion.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ JIM RICE